## HILL v. CASTNER-KNOTT DRY GOODS CO. (two cases).—166 S. W. (2d), 638.

Middle Section. August 1, 1942.

Petition for Certiorari denied by Supreme Court, December 19, 1942.

Goodpasture & Carpenter, of Nashville, for plaintiffs in error.
Keeble & Keeble, of Nashville, for defendant in error.

HOWELL, J. These consolidated cases are damage suits for personal injuries sustained by the plaintiff Mrs. J. C. Hill, a lady 71

years of age, when she fell on the second floor of the Castner-Knott building in Nashville in April, 1939.

Upon the second trial of the cases in the Circuit Court of Davidson County, there were verdicts of the jury for Mrs. Hill for $8,000, and for her husband J. C. Hill, for $2,000. Upon the hearing of a motion for a new trial the Circuit Judge set aside the verdicts of the jury, granted defendant's motions for directed verdicts, and dismissed the suits.

Plaintiff's motions for new trials were overruled and they have appealed in error to this Court and assigned errors.

The assignments of error are:

"1. The Trial Court erred in directing a verdict in favor of the defendant and dismissing the plaintiff's cause of action.

"2. The Trial Court erred in overruling plaintiff's motion for a new trial.

"3. The Court erred in sustaining the defendant's motion for a new trial and dismissing the suits."

The plaintiff Mrs. J. C. Hill, went to the department store operated by the defendant for the purpose of making some purchases, and got off of the elevator on the second floor where a dress sale was being held. She purchased two dresses. While the saleslady was wrapping her bundle, Mrs. Hill walked through the aisle between two counters to await the saleslady's return with her bundle and while passing along this aisle between these counters she tripped, either on a dress that was hanging from one of the drawers of a counter or in some other manner, and fell, breaking her hip. It does not appear that any one saw Mrs. Hill fall, and there is some conflict in the testimony as to what Mrs. Hill said at the time about what caused this accident. There was also some conflict in the testimony of the witnesses as to whether or not customers and salesladies had access to or did open the drawers in these counters and take dresses out. Mrs. Hill testified that her glasses had just been adjusted, that there was nothing to obstruct her vision and that she did not see the dress that had tripped her until after she had fallen. No witness except Mrs. Hill saw what tripped her and practically all of the salesladies and some of the customers who were there at the time testified in the case.

We have carefully read and re-read the testimony in this case and are unable to find any evidence of negligence on the part of the defendant.

There was no evidence that any one connected with the defendant left a dress hanging from a drawer or on the floor or knew of any such condition or was negligent in any manner. The aisle in which plaintiff fell was well lighted.

Reasonable minds could draw only one conclusion from the evidence in this case: that there was no negligence on the part of the defendant.

In the case of Jackson v. Texas Co., 10 Tenn. App., 235, on page 245, Crownover, J., sets out the cases in which a verdict should be directed as follows:

"Where the case involves only questions of law; where but one reasonable conclusion can be drawn from the proof adduced; where there is no disputed evidence on the material points; where, although the evidence is conflicting on minor matters, a conceded fact shows that the evidence on one side cannot be true; or, where by giving to the opposite party the benefit of the most favorable view of the evidence the verdict against him is demanded, a verdict should be directed. 38 Cyc., 1565-1567; [Nashville, Chattanooga & St. Louis] Railroad v. Justice, 5 Higgins 69 [5 Tenn. Civ. App. 69]."

In the absence of any proof as to who put the dress where it was or how long it had been there, or that any of the employees of the defendant had notice that it was there the jury should not be left to speculate or draw inferences.

In the case of Buckeye Cotton Oil Co. v. Campagna, 146 Tenn., 389, on page 396, 242 S. W., 646, on page 648, Justice Green said:

"It is conjectural upon this record whether the fall of the shed let down the pipe or whether the fall of the pipe knocked down the shed, and a verdict cannot be based on a conjecture."

Mrs. Hill testified in part as follows:

"Q. So when you got the package and change, you were ready to leave; did you stay at the table there where Mrs. Coker left you? A. No, I went to go through that little second aisle, second and first, and the dresses were hanging out of the drawer on the floor.

"Q. You went through here then? A. Yes, sir.

"Q. Did you go through there? A. No, I fell before I got through; caught my foot, got my feet, my feet got entangled in the dresses hanging out of the drawer and tripped me, and I fell, and of course I didn't get to her at all. She came over there and gave them to me.

"Q. I understood you to say you were thrown? A. Yes, sir.

"Q. She never did give them to you? A. She handed me the dresses with me lying on the floor.

"Q. You say that the dresses were hanging out of the drawer? A. Yes, sir.

"Q. Did you see them as you started through that aisle? A. No, I didn't see them until they tripped me and I fell.

"Q. And you say it threw you, a forcible blow? A. Yes, sir.

"Q. How long did you lie there? A. I went down face foremost, and evidently broke the left hip, and I went face foremost I remember.

"Q. When you discovered your predicament on the floor, did you see the dresses? A. Yes, sir, I raised my head and saw the dresses, partly out of the cabinet and partly in it.

"Q. Partly out of the drawer? A. Yes, was up in it.

"Q. Was up in the drawer? A. Yes, sir.

"Q. Did those cabinets have drawers in them? A. Yes, sir."

. . . . . . .

"Q. Mrs. Hill as I understand it you left the elevator and came down this wide aisle and took a dress off of table number two, and one off of the table number four? 'A. This table number four is, first.

"Q. You took the two dresses, you got the two dresses and gave the money to the saleslady, and she went to get your change, and wrap it up with your shoes? A. That is right.

"Q. And you had entirely finished with your shopping at that time;—are you certain that the tables or cabinets that you fell between were number one and two, that is the first one, and two, to your left as you get off the elevator you are positive about that? A. Yes, sir, I am positive of that, as you know it.

"Q. And there were drawers on the insides of those cabinets? A. Yes.

"Q. And there was a dress hanging out of the drawer? A. Yes, that is right.

"The Court. When did you first see the dress? A. Sir?

"The Court. When did you first see the dress hanging out of the drawer? A. I didn't see it until this caught and wrapped my feet in it hanging there partly in and partly out, but when I caught my heel—

"The Court. That is sufficient.

"Mr. John Bell Keeble. Q. You had just come by Dr. Bennett's? A. Yes, sir.

"Q. And he had straightened the frames of your spectacles, he hadn't done anything else to your glasses? A. No, sir.

"Q. You could see perfectly well after he had straightened those frames, could see with the aid of your glasses? A. Yes, sir.

"Q. And after you got through with your purchases, you started to go between cabinets one and two, back to the main aisle to wait for your packages? A. Started through there.

"Q. Was there anybody standing in that passage when you started through? A. No sir, there wasn't, not a soul.

"Q. Not a soul? A. Not a soul.

"Q. Was there anybody else standing close around you at that time? A. I didn't see anybody.

"Q. Then there was not any jam around this particular place? A. There was very little.

"Q. And you started through there? A. Yes, sir.

"Q. So then when you started through the passages between cabinets one and two were, there was not anybody in your way? A. No, sir.

"Q. And nothing on both to obstruct your view of the cabinet or to keep you from seeing, is that right? A. There wasn't any people there, I didn't see any people.

"Q. Was there anything else to prevent you from seeing, anything that might have been there? A. Well, I didn't look.

"Q. You didn't look? A. I didn't look down, I saw it as I fell, the dress was hanging in the cabinets partly out of there, partly in, partly in and partly out, that wrapped around my feet."

From all the evidence it seems to this Court that the presence of the dress hanging from a drawer or lying on the floor was not known to any of the employees of the defendant, the record does not disclose who put it where it was, and there is no evidence in the record which tended to show how long it had been there, or that defendant's agents or employees had any knowledge of it being there or that it had been there long enough to charge defendant with constructive knowledge of its presence; in fact, there is no evidence which tends to convict the defendant of any negligence in respect to this dress. The jury could have done nothing more than guess or speculate upon the matter.

██ In the case of Gargaro v. Kroger Grocery & Baking Co., 22 Tenn. App., 70, on page 74, 118 S. W. (2d), 561, on page 563, W. P. Moss, Special Judge, said:

"The proprietor, owner, or management of a retail store such as that operated by the defendant in this case is under an obligation to exercise ordinary care and diligence to maintain the premises in a reasonable safe condition for the patrons or customers of the store, who enter and remain therein as invitees. Such a proprietor or owner is not an insurer of the safety of customers in the store, but is liable only if injury results from a breach of the duty to use or exercise ordinary care for their safety and protection. Such is the rule in Tennessee, and it is well nigh universal in America. Buckeye Cotton Oil Co. v. Campagna, 146 Tenn., 389, 394, 242 S. W., 646; Loew's Nashville & Knoxville Corp. v. Durrett, 18 Tenn. App., 489, 79 S. W. (2d), 598; Bennett v. Louisville & N. R. Co., 102 U. S. 577, 26 L. Ed., 235; Armstrong v. Kroger Grocery & Baking Co. (Mo. App.), 78 S. W. (2d), 564; Kresge Co. v. Fader, 116 Ohio St., 718, 158 N. E., 174, 58 A. L. R., 132; Annotations, 61 A. L. R., 1289.

"Under this rule, liability ensues if an invitee is injured as a result of latent defects in flooring or hidden sources of danger; if obstructions are negligently placed in aisles by employees, as in Armstrong v. Kroger Grocery & Baking Co., supra; if placed there by others and allowed to remain when the defendant has knowledge of the fact or the circumstances are such that by the exercise of ordinary care the defendant should have known the obstruction was present; and in similar cases.

"Such a duty on the part of the proprietor or management of the store does not relieve the customer or invitee of the duty of exercising ordinary care for his or her own safety; and upon failure to do so, the invitee is deemed contributorily negligent. This is a fundamental rule of the law of negligence, and requires no citation of authority."

We do not deem it necessary to discuss at any further length the testimony of the witnesses in this case as our conclusion is based upon the absence of evidence of any negligence on the part of the defendant.

It results therefore that the assignments of error are overruled and the judgment of the lower Court dismissing the suits is affirmed.

The plaintiffs will pay the costs of these causes.

Felts, J., concurs.

Affirmed.