56 So.2d 177 (1952)
VOGTS et ux.
v.
SCHWEGMANN et al.
No. 19590.
Court of Appeal of Louisiana, Orleans.
January 7, 1952.
*178 May & Carrere, New Orleans, for appellants.
Julian B. Humphrey, New Orleans, for appellees.
REGAN, Judge.
Plaintiffs, Mr. and Mrs. Hughey Vogts, instituted this suit against defendants, John W. and Anthony Schwegmann, who conduct a super market under the trade name of John W. Schwegmann & Son and the Travelers Insurance Company, their liability insurers, endeavoring to recover on behalf of Mrs. Vogts for personal injuries the sum of $16,000.00 incurred as a result of having stumbled over a "box" in a passageway of the super market and, on behalf of Mr. Vogts for medical expenses incurred and anticipated by him as a result of his wife's injuries, the sum of $1250.00.
Defendants answered and admitted the occurrence of the accident by virtue of the existence of the "box" at the place and time indicated "which had just been placed on the floor" by an unknown customer, but denied that they were guilty of any negligence in the premises and, in the alternative, pleaded the contributory negligence of Mrs. Vogts, whom we shall refer to hereinafter as plaintiff.
From a judgment in favor of Mrs. Vogts in the sum of $4,000.00 and her husband in the sum of $750.00 defendants initiated this appeal. Plaintiff has answered the appeal requesting an increase in the judgment to $10,000.00.
The record reveals simple but rather difficult facts to assemble so graphically that the reader will possess a vivid mental picture of the geometric location of the obstruction in the passageway of defendant's super market; with this literary problem in mind we shall endeavor to delineate the facts.
Plaintiff, accompanied by her eleven year old son, Henry A. Vogts, visited defendants' super market on the morning of Saturday, March 20th, 1948, which is located within the boundaries of the downtown corner of Piety & Burgundy Streets in this City, to "shop for groceries". She entered the store and walked through a passageway, measuring seven feet, three inches in width, until she arrived at a turnstile which afforded her an entrance into a more spacious area designated as the self-service portion of the store where she made a selection of miscellaneous groceries. When plaintiff had consummated her "shopping", she returned to a section near the entrance of the store in which five cashiers are segregated. She was "checked out" by one of them and simultaneously the thought occurred to her that she had inadvertently forgotten to purchase one item reflected on her shopping list and she, therefore, reentered the service portion of the store and secured this article. Several minutes later she returned but to a different cashier's *179 counter, where her attention was absorbed in paying for and receiving the forgotten item. She then endeavored to leave the cashier's aisle by turning left at the end of the counter in order to exit into the passageway which she had originally used upon entering the store. At this point, as she emerged from the cashier's aisle and into the exit or entrance passageway, which it is conceded was provided for both purposes, she stumbled over a box located against the end or widthway of the cashier's counter. The box, as we understand the record, was a "home made" beer case containing a variety of beer bottles.
Plaintiff testified that after entering the store it was necessary for her to walk within the vicinity of the front end of the cashier's counter where the box was located but, at that time, she did not observe it in the entrance or passage area of the store which, as we stated hereinabove, measures from the front ends of the cashier's counters to a side of the store approximately seven feet, three inches in width; that she did not observe the box as she emerged from the cashier's counter as it had been placed in contact with the front end or widthway of the counter which effectively obstructed her view thereof; and finally that the injuries with which she is now afflicted were caused as a result of this accident.
Plaintiff's son testified he was eleven years of age; that he attended St. Vincent de Paul School where he matriculated in the Fifth Grade and was fully aware of the implications of an oath "to tell the truth"; that he opened the entrance door for his mother and she walked straight to the turnstile while he, in conformity with the established rules of the store, placed their own market basket beneath or upon shelves provided for this purpose and which are located to one side of the entrance area of the store. Plaintiff's son more pertinently testified that upon entering the store, he noticed the "beer box" in the exact location where his mother ultimately fell; that it protruded into the cashier's aisle about three inches; that the time consumed by his mother in completing her "shopping" was approximately thirty to forty minutes (this period of time is not in dispute) and that as his mother emerged from the cashier's aisle, measuring nineteen inches in width, she turned at the end thereof into the entrance or exit passageway and stumbled or fell because of the existence therein of the beer case. The record reflects that the lad, under persistent interrogation, appeared confused at this point whether his mother made a right or left turn as she emerged from the cashier's aisle, however, he tenaciously reiterated and his testimony was unshaken on cross-examination, that when he entered the store he positively noticed the "beer box" in the same location where his mother was injured, thirty or forty minutes later.
The trial judge adjourned court to visit the scene of the accident and, at this time, Henry Vogts was requested to place the box in the position which it had occupied on the floor of the store at the moment of the accident. The original box was not available for the demonstration since defendant had laboriously explained during the trial that it had mysteriously disappeared within one and a half minutes after the accident, therefore, a cardboard box, similar in size, was substituted and offered to the lad to recreate the factual conditions which existed on the day of the accident. He then voluntarily placed the box in position on its side, but his father, who had accompanied the litigants on this occasion, endeavored to surreptiously advise his son that he was in error and the box should be placed on its bottom. Henry Vogts then placed the box on its bottom in conformity with his father's instructions.
The trial judge was fully cognizant of what transpired and his reasons for judgment reveal that he wisely evaluated this situation and relegated it to its evidentiary category.
In order to rebut the very positive testimony of Henry Vogts, Anthony Schwegmann, one of the proprietors of the super market, Mrs. Claude Magnon, a former employee and Mrs. Mary Martino, a present employee of the defendants, testified that they did not observe the presence of Henry Vogts on the day of the accident inasmuch as their undivided attention was devoted to *180 assisting the plaintiff. Mrs. Magnon and Mrs. Martino, both of whom were employed as cashiers at the time of the accident, further stated that "they did not see the box either before or after the accident" and that they were engaged in servicing customers at their respective counters, a distance of about six feet from the location of the box which was at the end of Mrs. Magnon's counter and, therefore, obscured from their vision because of the relative height of the counter and the small size of the box.
Anthony Schwegmann stated that when the accident occurred he was "midway between the front and the rear, I was policing the area" to see that no obstruction was in the aisles and that everything was kept clean; that he policed the area of the store "every twenty minutes without fail"; that he had policed within the vicinity of the accident three minutes before its occurrence and the beer box was not there; that immediately after plaintiff fell he observed "a homemade box with different sorts of bottles, practically all black bottles, labels probably off; I did not take the precaution to raise them out and find out the distinct nature, whether they were Regal or Jax; (although on cross-examination he testified "I know they were beer bottles, I would say mixed, Regal, Jax, Falstaff and Dixie") I think pretty near all breweries had black and white bottlesbeer bottles"; that the beer case "stood on its bottom"; that it "was the average beer box I would say"; that he was unable to secure possession of the box because "I could not get them, they were moved, I would say they were moved in the period of less than I guess a minute or a minute and a half after the accident."
It provides interesting food for cogitation and is, perhaps, significant in the ultimate to observe that Anthony Schwegmann was the only witness in a position to perceive and then describe a most unusual characteristic possessed by a "beer box", that of being "home made". He continued to elaborate thereon as follows: "with different sorts of bottles", "practically all black bottles" and "labels probably off", "that the box stood on its bottom", and it "was the average beer box I would say" containing "Regal, Jax, Falstaff and Dixie". When asked "was there anything peculiar about the spaces in which the bottles were seated?" Schwegmann replied, "Yes, I would say they were; they wasn't a manufactured type at all; it had if I recall either wooden or tin fillers of homemade design. The box itself wasn't of manufactured type; it was of a homemade type; it was a crude box; fitted the boxes, I mean the bottles into the case more closely than the average beer box." It will be vividly recollected that Schwegmann endeavored to convey the indelible idea that he was unable to secure possession of the "box" because "I could not get them, they were moved in the period of less than I guess a minute or a minute and a half after the accident" and during this period of time "we administered to the lady that was hurt." It taxes our credulity to believe that Schwegmann would make such a microscopic examination of this box and its contents in "one minute or a minute and a half" and simultaneously "administer to the lady that was hurt."
In the final analysis the only two questions posed for our consideration by virtue of the foregoing pleadings and evidence are ones of fact and they are:
(a) The record does not reflect that the defendant had actual knowledge of the condition which caused the plaintiff's injuries, hence, we are relegated to answering whether the record reveals evidence that the condition complained of had existed for a sufficient length of time to reasonably justify the inference that the defendant failed to exercise ordinary care in the removal of the beer case from the customer's passageway.
(b) Whether the plaintiff was guilty of such contributory negligence that would act as a bar to her recovery.
No presumption of fault arises from the mere fact of injury to a customer, and in a suit for damages growing out of such injury, the plaintiff must show that the injury was caused by the negligence of the storekeeper or one of its employees. It must be conceded, without equivocation, that a beer box upon the floor of the passageway *181 of a super market is potentially dangerous to the patrons of the store, but real or constructive notice of its presence must be proven before the proprietors can be held responsible for the injury which it caused. In other words, it must appear that the proprietors or one of their employees knew that the beer box was on the floor or that it remained there for so long a time as to amount to constructive notice and the burden of proof rests upon the plaintiff to establish this essential fact.
In our opinion plaintiff has successfully carried this burden of proof. The impressive testimony of Henry Vogts, plaintiff's son, was forthright and sincere and it was never successfully contradicted, to the effect that upon entering the store with his mother, he noticed the beer box in the passageway where his mother ultimately stumbled and fell thirty or forty minutes later, and suffered the injuries which are the subject of this litigation. In our opinion the elapsing of thirty or forty minutes is sufficient time in which to give a storekeeper or his employees constructive notice of the existence of a dangerous condition in a portion of his store which customers are invited to use, whether this condition was created by the act of another customer or it arises from other circumstances, and the failure of the proprietor to exercise reasonable diligence in remedying this potentially dangerous condition is negligence and he is responsible for injuries that may result in consequence thereof to a customer.
Focusing our attention on the last question posed for our disposition, an assiduous examination of the record confirms the factual picture presented hereinabove, which, in our opinion, decisively obliterates the accusation that the plaintiff was guilty of contributory negligence. Only for the purpose of preserving continuity, we reiterate that the "box" was more or less completely obscured from her vision by the widthway and height of the cashier's counter, which was twenty inches in width, thirty and one-quarter inches in height and eight feet in length. It is difficult to conceive of a more complete accidental visual obstruction. Plaintiff had just been "checked out" by the cashier, where her attention had been absorbed in receiving and paying for the "forgotten item", and had walked approximately fifty-four inches, and emerged into the customers' passageway, where she had a right to be, when she was caused to fall by the unexpected presence of a "beer box" concealed by the height and widthway of the cashier's counter. It is most obvious that in her involuntary occupation of a state of ignorance, plaintiff was unable to perceive the "beer box." A fortiori, she was not negligent in failing to exercise precaution commensurate with the potentially dangerous existing circumstances.
The trial judge shared this opinion as is reflected by the following extract from his reasons for judgment:
"Even if the box were not protruding into the aisle, as testified to by Henry Vogts, it was against the front end of the counter where Mrs. Vogts was injured, and in a position where she could easily stumble over it when walking as an ordinary prudent person would walk. She could not possibly have seen the box, as its view was obstructed by the counter. She testified that she did not at any time see the box.
"Her failure to see the box under these circumstances was not necessarily negligence."
The nature of plaintiff's testimony also convinces us that she, in the broadest sense, was an honest litigant.
The medical evidence reveals that the plaintiff suffered a "sacroiliac injury, moderate, with erecti spini spasm and residual low back pain; contusion of abdomen, moderate; contusion, left lower leg with subperiosteal hemorrhage, severe, with extensive crushing soft tissue injury with residual pain and swelling; torn lateral ligament, left ankle, with hemoarthrosis of joint; torsion strain injury to healing compound fracture, right tibia and fibular, with hemoarthrosis right ankle, associated with extreme pain and limitation of motion."
Plaintiff's physician, Dr. Blaise Salatich, stated that her injuries were severe with the exception of the contusion of the abdomen, which he classified as moderate. Both *182 plaintiff and her physician stated that the type of injury which she sustained was extremely painful and disabling. During the course of treatment, it was necessary that a long plaster cast be applied to plaintiff's leg, which remained thereon for three weeks, during which time she was confined in a bed in which fracture boards had been inserted beneath the mattress. Thereafter she was confined to bed for a period of approximately six weeks due to the condition of her leg.
Ordinarily, we would be inclined to increase the award made to plaintiff by the court, a quo, however, records of the Charity Hospital which were offered in evidence by the defendants, together with the testimony of Dr. Lee E. Schlesinger, an orthopedist and staff member thereof, who interpreted the x-rays, disclosed that Mrs. Vogts had fallen from a ladder from a height of five feet on April 25th, 1947, or about eleven months before this accident and had sustained a serious compound fracture of the right tibian fibula. Shortly after the accident of April 25th, 1947, she commenced to suffer chronic illness in the lower region of her stomach and upper abdomen and, in consequence thereof, her gall bladder was removed on May 22nd, 1947; that as a result thereof she was required to remain under the care of the resident physicians of Charity Hospital through March 14th, 1948, which was six days prior to the present accident, at the time of which plaintiff was wearing a brace on her leg as a result of the first accident. We have endeavored to evaluate plaintiff's physical disabilities incurred prior to this accident and have, therefore, decided not to increase the award made by the judge, a quo, for the injuries enumerated herein.
Mr. Vogts was awarded the sum of $750.00, $700.00 of which was apparently to pay the bill of Dr. Blaise Salatich and $50.00 for incidental medical expenses. The record reflects that Mr. Vogts has a total income received by virtue of a pension of $100.00 a month; that all of plaintiff's previous ailments were treated through the facilities of the Charity Hospital. It appears that this fact was or should have been known and considered by her physician when he evaluated his professional services through the rendition of a bill to plaintiff amounting to $700.00. Her physician states that he treated her immediately after the accident and visited her each day for one week following the accident; that thereafter he visited her home at periodic intervals and she visited his office on ten occasions. We are of the opinion that Dr. Salatich's bill should be reduced from the sum of $700 to $250.00.
For the reasons assigned the judgment appealed from is amended by reducing the amount awarded Mr. Hughey Vogts from $750.00 to $300.00. In all other respects the judgment appealed from is affirmed. Defendant to pay all costs.
Amended and affirmed.