## LILLIAN M. McDONOUGH AND ANOTHER v. NEWMANS CLOAK & SUIT COMPANY.

77 N. W. (2d) 59.

May 4, 1956—Nos. 36,762, 36,763.

*R. J. Leonard, E. M. Warlich,* and *Doherty, Rumble & Butler,* for appellants.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *David W. Nord,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Plaintiffs appeal from an order of the district court granting defendant's motion for judgments notwithstanding the verdicts and denying defendant's alternative motion for a new trial.

One action was brought by Lillian M. McDonough for the recovery of damages for injuries sustained by her when she fell over a modeling stand or stool in the hallway of the defendant's store, Newmans Cloak & Suit Company, and another action was brought by her husband, Eugene R. McDonough, for consequential damages to him as a result of said injuries to his wife. The jury returned verdicts for Mrs. McDonough in the sum of $11,000 and for her husband in the sum of $2,377.80.

On April 27, 1949, Mrs. McDonough was shopping in defendant's store which is located in St. Paul and specializes in the sale of ladies suits and dresses. On the second floor of the store is a main salesroom about 60 feet long. To the rear of the salesroom are fitting rooms which are approached by way of an aisle or hallway. On the day in question Mrs. McDonough and her mother accompanied plaintiff's aunt, a Mrs. Harkins, on a shopping trip to defendant's store to assist her in the selection of some dresses. With the aid of a sales clerk at the store several dresses were selected, and the three women, accompanied by the clerk, left the main salesroom and proceeded through the aisle or hallway to the fitting rooms. At this time no modeling stand was in the aisle nor was one observed by the plaintiff or those accompanying her. Because the selected dresses did not meet with Mrs. Harkins' approval, the sales clerk and Mrs. McDonough returned, through the aisle or hallway in-involved, to the main salesroom. On this trip Mrs. McDonough saw no modeling stand.

After picking out two more dresses in the main salesroom, Mrs. McDonough proceeded to return with them to the fitting room. As she left the salesroom, intending to go through the aisle or hallway to the fitting room, she made a right turn into the aisle or hallway and fell over a modeling stand.

The entrance into the hallway leading to the fitting room contained no doors but was an open archway. The hallway was approximately five and one-half feet in width. There was some conflict in the testimony as to the exact size of the stand but the trial court in its memorandum described it as approximately 30 inches square and two feet high, consisting of a heavy wooden portable frame with four legs. According to the testimony, after Mrs. McDonough fell the stand was located "A very short ways inside the archway and a little bit out from the wall." "A short ways" was estimated at between a foot and two feet from the archway. Five minutes elapsed between the time when Mrs. McDonough made her trip from the fitting room down the hall into the main salesroom to select the dress and the time when she returned again to the same hallway where she fell.

By stipulation it was agreed that "if all of the people who worked in Newmans Cloak & Suit Co. were to be called they would testify they knew nothing about how the stool got there." The only evidence in the record as to whether any customers were in the other fitting rooms at the time of the accident was that of the plaintiff and she stated that she did not know.

At the conclusion of the trial the jury found for the plaintiffs. Thereafter the court granted a motion of the defendant for judgments notwithstanding the verdicts on the ground that the plaintiffs had failed to sustain their burden of proving that the stand was placed at the point of the accident by defendant. At the same time the court denied the alternative motion of the defendant for a new trial. The plaintiffs appeal from the order.

■ The only question submitted to us on appeal is whether the evidence was sufficient to sustain the verdicts of the jury.

The rules of law applicable to this case are not in dispute. A shopkeeper has the duty to keep and maintain his business premises, including passageways, in a reasonably safe condition for use of customers or invitees. He is liable only for injuries resulting from his negligence and *is not an insurer* of the safety of his customers. Messner v. Red Owl Stores, Inc. 238 Minn. 411, 57 N. W. (2d) 659; Smith v. Emporium Merc. Co. Inc. 190 Minn. 294, 251 N. W. 265; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213.

■ Further, it is not disputed that the rule in Minnesota is that defendant would be negligent only (a) if the defendant or one of his employees placed the stand in the aisle where the accident occurred or saw it there, or (b) if the stand was in the aisle for such a length of time that defendant should have known it was there, i.e., constructive notice. Hubbard v. Montgomery Ward & Co. Inc. 221 Minn. 133, 21 N. W. (2d) 229.

It is agreed by counsel that the question as to whether the stand was in the aisle for such a time as to give defendant constructive notice is not an issue under the facts in this case. There is also no contention that the plaintiff was guilty of contributory negligence. The case therefore resolves itself into a determination of this question: Was the stand that caused the accident placed in the aisle by one of defendant's employees?

■ In discussing this question consideration should be given to the following facts: First, there was a stipulation between the parties that "if all of the people who worked for Newmans Cloak & Suit Co. were to be called they would testify they knew nothing about how the stool got there." This, at the very least, means that each of the employees would testify that he had no knowledge or recollection of placing the stand in the aisle himself; it would also imply that each employee would testify that he had no knowledge or recollection of anyone else placing the stand in the aisle. Second, the only evidence in the record as to whether any other customers or third persons, other than defendant's employees, were in the area at the time in question was that of plaintiff. She testified that she had no knowledge as to whether any customers were present at the time involved. Third, there is no evidence in the record as to whether customers or other persons ever moved the stand but it is obvious from the nature of the stand that it was possible for anyone to have moved it.

Reviewing the evidence in the light most favorable for the prevailing parties, it can be said that Mrs. McDonough fell over a stand in defendant's store and sustained injuries; that the stand was one belonging to defendant company; and that the inference is

that defendant's employees would appear to be the ones most likely to use the stand or to move it from place to place.

Robinson v. Great A. & P. Tea Co. 347 Mo. 421, 147 S. W. (2d) 648, is a case arising from somewhat analagous facts. In that case plaintiff sustained injuries when she fell over a box of sweet potatoes in the vestibule exit of defendant's store. She obtained a judgment for $10,000 from which defendant appealed. Plaintiff had entered the store through the vestibule which was 11½ feet wide and contained an entrance door to the store on one side and an exit door on the other. In the center of the vestibule, between the two aisles or approaches leading up to the entrance and exit doors, the defendant had an exhibit of sweet potatoes in boxes two feet long, one foot wide, and eight inches deep. When entering the store, plaintiff testified, she saw the exhibits on display but did *not* see a box of sweet potatoes in the vestibule exit from the store. Plaintiff remained in the store ten or fifteen minutes and proceeded to leave through the exit. As she did so she fell over a box of sweet potatoes lying crosswise in the exit. The court stated that there was no evidence that an employee of defendant placed the box in the aisle; that an employee had sold sweet potatoes from the exhibit on that day; that a customer had placed the box in the aisle; or that a trespassing meddler had placed the box in the aisle. The court further said (347 Mo. 425, 147 S. W. [2d] 650):

"* * * It follows that there is evidence tending to show that the box was placed in the exit passageway during the ten or fifteen minutes plaintiff * * * [was] in the store. *Even so, there is no evidence tending to show who so placed the box. Any finding on this question would be based on mere conjecture.* Furthermore, if, during the time plaintiff and her mother were in the store, the box was placed in the exit passageway by either a prospective customer or trespassing meddler, the defendant company is not liable, for the box was not in the exit passageway a sufficient length of time to charge the company with constructive notice of the obstruction." (Italics supplied.)

The court ordered the judgment for plaintiff reversed.

In Hill v. Castner-Knott Dry Goods Co. 25 Tenn. App. 230, 166 S. W. (2d) 638, certiorari denied by Tennessee Supreme Court, plaintiff, while in the dress department of defendant department store, sustained injuries when she fell while walking down one of the aisles. The fall was caused when she tripped (25 Tenn. App. 231, 166 S. W. [2d] 638) "either on a dress that was hanging from one of the drawers of a counter or in some other manner." The trial court directed judgment for defendant. Upon appeal the appellate court, in discussing whether defendant would be liable if plaintiff tripped on a dress, first stated that there was conflict in the testimony as to whether or not customers and salesladies had access to or did open the drawer in the counter and take dresses out. The court said there was no evidence that anyone connected with the defendant store had left the dress hanging from the drawer or on the floor or knew of any such condition. It then stated (25 Tenn. App. 232, 166 S. W. [2d] 639):

"In the absence of any proof as to who put the dress where it was or how long it had been there, or that any of the employees of the defendant had notice that it was there the jury should not be left to speculate or draw inferences."

The judgment of the trial court directing a verdict for defendant was affirmed.

In Sherlock v. Strouss-Hirshberg Co. 132 Ohio St. 35, 4 N. E. (2d) 912, the plaintiff fell over a sewing stool in an aisle near the sewing and thread counter of defendant's store. Plaintiff claimed she had presented a prima facie case of negligence when she had proven the ownership of the store by defendant and that she had fallen over an object belonging to defendant which obstructed the aisle and which was under the supervision of an employee of defendant. Plaintiff further claimed that, having presented this prima facie case, and, in the absence of any explanation by the defendant as to the presence of the stool in an aisle of the store at the time in question, she was entitled to judgment. The court in discussing both the prima

facie case theory of plaintiff and the doctrine of res ipsa loquitur stated (132 Ohio St. 43, 4 N. E. [2d] 916) :

"Now, under all the circumstances, who placed the stool in the aisle? Is it not just as reasonable to infer, under all the circumstances of this case, that a customer, a child or an interloper placed it there as it is to infer that defendant, its servants or employees so placed it?

\*     \*     \*     \*     \*

"We cannot agree that plaintiff presented a *prima facie* case. She did not prove who was responsible for the stool being in the aisle; but from the fact that it was there she insists the jury had the right to infer that defendant was responsible for its being there."

The court, in reversing a jury verdict for the plaintiff, concluded that the proof was not sufficient to uphold a judgment for the plaintiff on the prima facie grounds argued by the plaintiff or to put defendant upon explanation under the theory of res ipsa loquitur. See, also, Carpenter v. Herpolsheimer's Co. 278 Mich. 697, 271 N. W. 575; Carroll v. Great A. & P. Tea Co. 258 App. Div. 937, 16 N. Y. S. (2d) 608; Oelschlaeger v. Hahne & Co. 2 N. J. 490, 66 A. (2d) 861.

When reviewing an appeal from a decision notwithstanding the verdict we must view the evidence in the manner most favorable to the verdict. Greenwood v. Evergreen Mines Co. 220 Minn. 296, 19 N. W. (2d) 726. We have stated, however, that the evidence must be something more than consistent with plaintiff's theory of how the accident happened, and that reasonable minds must be able to conclude from the circumstances that the theory adopted by the verdict outweighs and preponderates over any other theory. Smock v. Mankato Elks Club, 203 Minn. 265, 280 N. W. 851.

We are of the opinion that under the record in this case we cannot conclude that the theory adopted by the verdict is such that reasonable minds can say that it outweighs and preponderates over any other theory. The plaintiff claims that the conclusion that one of the defendant's employees placed the fitting stand where it was found is supported by the reasonable inferences to be drawn from the evidence in the record. However, there is a complete lack of evi-

dence as to how the stand came to rest in the position where the accident occurred. An inference can be drawn from these facts that a customer, a child, or other person moved the stand into the hallway. The stand might have been moved at the convenience of both the clerks or customers in the due course of business. In the absence of any evidence as to how the stand came to be at the place of the accident, the mere fact that it was not in its customary place would not constitute negligence per se.

Appellant cites Sears, Roebuck & Co. v. Peterson (8 Cir.) 76 F. (2d) 243, as controlling in this case. In that case plaintiff had entered defendant's store and in following a clerk along an aisle she caught her foot in a piece of twine causing her to fall. The twine was used in wrapping evergreen trees in the store, and the twine which caused the fall was a loop used at the top of the trees. Some of these pieces of twine had been removed from the trees to enable the sale clerks to show the trees to their customers. The question on appeal was whether the trial court had erred in denying defendant's motion for a directed verdict. The court, in a divided opinion upholding the trial court, stated (76 F. [2d] 246):

"The following circumstances may be noted as bearing upon the question of negligence: (1) The twine in which plaintiff became entangled, and over which she fell, was the character of twine used by defendant in wrapping the evergreen trees; (2) it was the same length as that used in wrapping a tree; (3) it had at its end the same kind of loop or knot as that used; (4) it was lying near an unwrapped tree; (5) *only employees of defendant unwrapped and removed the twine from these trees.* From these circumstances, the jury was warranted in inferring that the twine over which plaintiff tripped and fell had been removed from one of the evergreen trees by one of defendant's clerks, and thrown or left in the aisle by him. These inferences all logically flow from the proven facts." (Italics supplied.)

In the instant case it is apparent that the first three factors cited in the Sears case are fulfilled as there is no dispute that the stand belonged to the defendant. In similar manner the fourth point is

fulfilled here by virtue of the fact that the stand was in defendant's store and was indeed near the fitting room where it was most used. However, the Sears case must be distinquished from the instant case on the fifth point. *In the instant case there is absolutely no evidence that only the employees of the store could have occasion to move the stand.* In fact it is apparent that customers had ready access to the stand and that it could easily have been moved by a customer for a variety of reasons; not the least of which might be to obtain more space in one of the fitting rooms in which the customer was trying on wearing apparel.

It should be observed that in the Sears case the court noted that the defendant had not placed upon the witness stand two of the clerks who were employed in the department at the time of the accident. From this the court there assumed that had they been called (76 F. [2d] 246) "they would not have contradicted any of the testimony produced by plaintiff with reference to the unwrapping of these trees by defendant's employees," and would not have testified "that the twine was not removed from the evergreen tree by one of them, and thrown in the aisle, where it was found at the time of the accident." This reasoning has no application to the instant case because of the stipulation between the parties that if all of the employees had been called they would have testified that they did not know how the stand got where it was when the accident occurred.

The evidence submitted, even though viewed in the light most favorable to the plaintiff, fails to sustain his burden of proving that defendant's employees placed the stand in the aisle. It is our conclusion that, based on these facts, there is no justification for preferring one inference over another, and therefore that neither is of evidentiary weight in support of the verdict and both must be rejected as purely speculative. Saaf v. Duluth Police Pension Relief Assn. 240 Minn. 60, 59 N. W. (2d) 883. If we were to uphold the jury verdict in this case with no more basis in fact than is apparent from the testimony elicited at the trial, we would, in effect, be de-

ciding that a shopkeeper is an absolute insurer of the safety of his customers, a theory which this court has rejected in the past.

The dissent has cited 13 Dunnell, Dig. (3 ed.) § 6987, which states exactly the same rules of law which the majority opinion has previously stated and used in arriving at its conclusion in this case.

In Schrader v. Kriesel, 232 Minn. 238, 243, 45 N. W. (2d) 395, 398, relied on by the dissent, the court stated that the evidence showed "that defendant knew of these conditions and had done nothing to change or improve them." On this basis the Schrader case is clearly distinguishable from the instant case as no such evidence of knowledge on the part of the defendant here was adduced.

In Grzboski v. Bernheimer-Leader Stores, 156 Md. 146, 143 A. 706, the plaintiff slipped on an orange peel and fell. There was evidence that the orange peel had been swept, with other rubbish, into a pile by one of defendant's employees and that plaintiff had then stepped upon it. In the instant case there is no such evidence as to how the stool came to be at the point of the accident.

Vogts v. Schwegmann (La. App.) 56 So. (2d) 177, and Ralph v. MacMarr Stores, 103 Mont. 421, 62 P. (2d) 1285, are both cases in which liability of the defendant was determined on the theory of constructive notice. As we have pointed out, the question of defendant's constructive notice is not an issue under the facts of this case and therefore these two cases are not in point.

The minority also cites White v. Herpolsheimer Co. 327 Mich. 462, 42 N. W. (2d) 240, 26 A. L. R. (2d) 667, but we do not regard the situation there as analogous to the case at bar. In that case plaintiff tripped on a brace extending into the aisle from a child's lawn swing. There was evidence from plaintiff's witness, who described herself as "not puny," that after the accident she had to use all her strength to push it out of the aisle. The stand involved in the instant case obviously could be readily moved by anyone insofar as ease of movement was concerned. While the White case does indicate certain principles in opposition to the majority opinion, it is in those respects contrary to the cases cited by the majority in support of its conclusion.

As we have stated, there is no evidence in the record that only the employees of the store would have occasion or opportunity to move the modeling stand, nor can we accept the proposition that a utility used by a storekeeper in his business cannot be used in such a way by a customer that it causes injury to another with no fault on the part of the storekeeper. See, Oelschlaeger v. Hahne & Co. 2 N. J. 490, 66 A. (2d) 861.

In view of our conclusion, we must sustain the judgment of the trial court in granting the judgment for the defendant notwithstanding the verdict.

Affirmed.

MURPHY, JUSTICE (dissenting).

I cannot agree with the majority opinion for the reason that I do not believe the record supports the holding in favor of the defendant on the assumption that the modeling stand which caused plaintiff's injuries might have been placed in the aisle by a customer or some other person.

This conclusion which seems to be based upon unwarranted assumptions and inferences is not realistic in view of the nature of the work carried on at the particular premises involved. Nor is it supported by the numerous authorities cited in 13 Dunnell, Dig. (3 ed.) § 6987, which hold the storekeeper is required to exercise reasonable care in maintaining safe conditions for his customers against hazards which might reasonably be anticipated in the normal course of events and which might result in injuries to customers absorbed in the inspection or examination of merchandise which they are purchasing. Where reasonable men may differ as to what constitutes ordinary care, that issue should be determined by the jury.

In Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395, this court took the position that there is a broad liability imposed upon the proprietor to keep his premises in a reasonably safe condition. In that case, the plaintiff was injured by a fall after catching her foot in a rut on a secondhand auto lot maintained by the defendant. In view of the season and the purpose for which the lot was used

it could be assumed that ruts and unevenness could naturally be expected in a lot occupying two-thirds of a city block. The broad holding of liability in that case indicated that proprietor was charged with notice of the particular conditions existing at the time and place even though the record supported the conclusion that the dangerous condition was contributed to by the weather and the known use to which the property was put. This decision was probably an extension of our holding in Ober v. The Golden Rule, 146 Minn. 347, 178 N. W. 586, where the facts are not greatly dissimilar to those here. While the most recent case of Messner v. Red Owl Stores, Inc. 238 Minn. 411, 57 N. W. (2d) 659, might at first blush appear to narrow the import of the holding in the Kriesel case, it is readily distinguishable because it had to do with an injury caused to a customer who stepped on a banana peel, an object not used as a utility in the conduct of the storekeeper's business. We held there was no evidence that the storekeeper knew or should have known of its presence on the premises.

In the recent case of White v. Herpolsheimer Co. 327 Mich. 462, 42 N. W. (2d) 240, 26 A. L. R. (2d) 667, the facts showed that the plaintiff fell over the base portion of a swing which projected into an aisle of the defendant's store. The following excerpt from that opinion needs no amplification (327 Mich. 469, 42 N. W. [2d] 243, 26 A. L. R. [2d] 672):

"* * * Defendant's claim that it had no notice of such situation, if it existed, is not tenable. It is in effect based on the assumption that a third party, without the knowledge of defendant's employees and without reasonable opportunity on their part to become aware of the altered situation, had moved the swing in such manner as to cause the extension into the aisle. There is nothing in this record to justify such an assumption or inference. *The jury was entitled to conclude from the evidence that the swing at the time of the accident was in the position in which defendant's employees had placed it.* Knowledge of the condition so created was chargeable to defendant. Wine v. Newcomb, Endicott & Co., 203 Mich. 445 [169 N. W.

832]; Hulett v. Great Atlantic & Pacific Tea Co., *supra."* (Italics supplied.)

There are cases from other jurisdictions supporting this view. Grzboski v. Bernheimer-Leader Stores, 156 Md. 146, 143 A. 706. Annotation, 26 A. L. R. (2d) 680, cites the Louisiana case of Vogts v. Schwegmann (La. App.) 56 So. (2d) 177, where it was held that the proprietor of a supermarket had "constructive notice" of a beer box projecting into the passageway. See, also, Ralph v. MacMarr Stores, 103 Mont. 421, 62 P. (2d) 1285.

The majority opinion places emphasis upon Sears, Roebuck & Co. v. Peterson (8 Cir.) 76 F. (2d) 243. Although this is a pre Erie R. Co. v. Tompkins (304 U. S. 64, 58 S. Ct. 817, 82 L. ed. 1188) case, the majority appears willing to accept its principles as a basis for discussion of liability. They state that the facts here meet the first four of the five requirements for liability as indicated in that opinion but hold that this case must fail because it does not meet with the fifth condition which recites that (76 F. [2d] 246) "only employees of defendant unwrapped and removed the twine from these trees." By the same token, it may be said here that only employees of the defendant in this case used the modeling stand over which the plaintiff fell. The logical inference is that the modeling stand, an adjunct of the proprietor's business, was found where it was placed by his employees. It would seem more reasonable to assume that customers including children would be responsible for the loose twine in a busy department store than it would be to assume that some interloper in a ladies' dress shop mysteriously removed a utility necessary to the work carried on by the employees. Moreover, there is no evidence in the record as to the presence of other customers on the premises.

It seems to me that the basic fault here lies in the storekeeper's breach of duty in permitting a piece of his equipment to be in a place where it created a hazard. This stand was owned and controlled by the storekeeper and used in the conduct of its business. It should not be confused with a banana peel or other object which might find its way upon the premises through unexplained conduct

of others thereby creating a hazardous condition which the owner could not anticipate or guard against. Certainly, if a shears had been left in a dangerous place, or a dolly platform commonly used in moving boxed merchandise had been found in the hallway, as a result of which customers absorbed in their purchases might be injured, it would not be reasonable to assume that such dangerous instrumentalities were brought upon the premises by strangers or customers. We are not concerned here with an object which is foreign to or unrelated to the conduct of the enterprise conducted on the premises. The assumption indulged in by the majority is not valid as to a utility which the storekeeper owns and uses in the conduct of the business he carries on.

Nor do I think the fact is controlling that the record contains the stipulation to the effect employees, if called to testify, would say they knew nothing of how the modeling stand found its way to the location in question. It seems to me the defendant was under some obligation to furnish affirmative evidence as to how its own utility was found in a hazardous location. In Westling v. Holm, 239 Minn. 191, 193, 58 N. W. (2d) 252, 254, we stated:

"* * * the evidence sustaining the hypothesis must preponderate as against other hypotheses, but need not exclude the latter by conclusive demonstrations of their impossibility. * * * It is the province of the jury to determine the weight of, and to choose between, conflicting inferences."

Since the circumstances here establish inferences that the offending object was a utility placed in a hazardous location by the defendant, it was a question of fact for the jury to decide.

For the foregoing reasons, I respectfully dissent.

NELSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Murphy.