224 So.2d 496 (1969)
Nina J. HAY, Plaintiff-Appellee,
v.
SEARS, ROEBUCK & COMPANY, Defendant-Appellant.
No. 2777.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1969.
Gist, Methvin & Trimble, by John W. Munsterman, Alexandria, for defendant-appellant.
*497 Neblett, Fuhrer & Hunter, by Leonard Fuhrer, Alexandria, for plaintiff-appellee.
Before TATE, HOOD and MILLER, JJ.
MILLER, Judge.
Miss Hay seeks damages for personal injuries sustained when she tripped and fell while in the Alexandria Sears, Roebuck & Company store on December 7, 1967. The trial court awarded damages to plaintiff and defendant perfected a suspensive appeal.
Defendant contends that the trial court committed three errors: (1) Finding that the proprietor or one of its employees created a dangerous condition, or that such a dangerous condition was known to him or to have existed for such a length of time that the proprietor should have discovered it. (2) Failing to find that Miss Hay was contributorily negligence in failing to see the obstruction in the aisle. (3) Alternatively, that the award of damages was manifestly excessive.
Miss Hay was employed at the Veterans Administration Hospital in Pineville as a registered nurse and was to report for work at 2 p.m. that day. At the time of the accident she was dressed in slacks and wearing low heel shoes. She was bringing to the gift-wrap department four packages which she had purchased from Sears. The packages were described as a dress box, carried on the bottom; two small boxes stacked on top of the dress box and on top of that a doll in a little cradle. The bottom package was being carried at about her waistline or lower abdomen and the top of the doll and cradle was only ten to twelve inches above the bottom of the dress box, or about chest height. While walking with these boxes she could not see directly down to the floor but she could see ahead at an angle to the floor and also laterally.
The store opened at 9:00 a.m. and the accident occurred at about 9:30 a.m. The gift wrap department or counter had been set up in the store for the accommodation of persons wishing to have their packages gift wrapped for Christmas. The store charged a fee for this service. This department was adjacent to the paint department and the aisle separating the gift wrap counter from the paint department was approximately two and one-half feet wide.
One gallon cans of paint were stocked in the lower shelves facing the gift wrap counter and the manager of the paint department was aware of the fact that customers frequently removed these gallon cans of paint to sit on them while waiting for their packages to be gift wrapped.
In order to get to the gift wrapping counter, Miss Hay walked down an aisle which runs parallel to the rear wall of the store and then turned right into the aisle which ran in front of the gift wrapping counter. As she turned the corner from one aisle to the other and as she took her first step into the two and one-half foot wide aisle running between the gift wrap counter and the paint department, her foot struck what she described as a heavy object on the floor causing her to fall forward onto the floor. Her slacks were torn in the area of the right knee and she sustained a laceration to her right knee. She was taken to Cabrini Hospital for treatment.
Shortly after the fall, Mr. Smith, manager of the paint department, Mrs. Gaspard, a saleswoman in that department, and Mrs. Nugent, of the gift wrap department went to plaintiff to give her what aid they could. Mr. Smith found two of the one gallon paint cans turned over in the aisle and one standing right side up in the aisle. He also found vacant spaces in the bottom shelf facing the aisle where these cans of paint had apparently come from. These vacant spaces began only one to one and one-half feet from the corner of the counter (Tr. 82). There can be no doubt but that Miss Hay tripped over these cans of paint which were in the aisle.
The counter in front of Mrs. Nugent was so high that she could not possibly see *498 the aisle in front of her department. Mr. Smith testified that he had been very busy that morning having already served two or three customers and then being in the process of serving his third or fourth customer when the accident occurred. He also testified that it was customary to check these aisles, but he was not sure that he did or did not look down that aisle before the accident happened that morning. While it is easy to understand the difficulty in recalling events which transpired fourteen months before, it must also be noted that when an accident occurs the witnesses then search their memory concerning events which occurred immediately prior to the accident. And witnesses usually remember these relevant incidents long after the accident. For example, Mr. Smith testified that he remembered seeing Miss Hay enter the store even though he was busy waiting on another customer, and had no reason except for the packages she was carrying to take note of her entry.
Mrs. Gaspard testified that she was quite sure that she had not waited on any customers that morning; that she was standing by the cash register when the accident occurred; and that she did not remember whether she did or did not look down this aisle before the accident occurred. She also testified that if she had looked down the aisle and if there had been paint cans blocking the aisle, she would certainly have seen them.
As shown by exhibit P-6, the paint department is made up of counters separated by three aisles with the cah register located in the middle aisle. One standing by the cash register or in the main section of the paint department cannot possibly see that part of the aisle where plaintiff fell.
We find ample support for the trial court's finding that Miss Hay tripped over several one gallon cans of paint which were located about two feet within the entry into the aisle separating the paint department from the gift wrap counter. The serious issue on this phase of the case concerns the failure of plaintiff to prove that Sears' employees placed the cans in the aisle and the question of whether or not these employees knew or should have known of the existence of this hazard.
The law applicable to the facts and circumstances presented here is well established. A proprietor owes a duty to his customers to use ordinary care to keep his aisles, passageways and floors in a reasonably safe condition. Although the law imposes a duty of reasonable care by the proprietor toward his customers, the storekeeper is not the insurer of their safety while on his premises. In order to impose liability on a storekeeper or proprietor the plaintiff must prove by a clear preponderance of evidence that a dangerous condition, which caused injury to the plaintiff, was:
(1) created or maintained by the storekeeper or one of his employees; or
(2) if not created by the storekeeper or one of his employees, that (a) the storekeeper or one of his employees had actual knowledge of the dangerous condition, or (b) the dangerous condition had remained long enough for the storekeeper to have constructive knowledge of the condition.
Lofton v. Travelers Insurance Company, 208 So.2d 739 (La.App.3rd Cir. 1968); Jones v. W. T. Grant Company, 187 So.2d 470 (La.App.3rd Cir. 1966); Peters v. Great Atlantic & Pacific Tea Company, 72 So.2d 562 (La.App. 2nd Cir. 1954).
After very carefully reviewing the testimony of all five Sears employees who testified concerning their general duties which were sufficient to allow them to discover these cans of paint had they been in the aisle on the morning of December 7th, but each of whom could not specifically recall that they checked or cleaned this aisle before the accident occurred, the trial court held:
"* * * it occurs to this Court that employees of the defendant using due care could have, within a matter of seconds *499 after arriving for work, checked the aisles and counters to see that everything was in order and if this had been done the accident would not have happened.
"The Court finds that gallon cans of paint lying in an aisle or passageway such as they were in the instant case constituted a hazard and were potentially dangerous to the patrons of the store. See Vogts v. Schwegmann, [La.App.], 56 So.2d 177. It is the further opinion of this Court that the cans of paint were in the aisle for approximately 30 minutes which is sufficient time to give a storekeeper or his employees constructive notice of the existence of a dangerous condition in a portion of the store which customers are invited to use, whether this condition was created by the act of another customer, or, it arises from other circumstances. See Vogts v. Schwegmann, supra; James v. Food Town, Inc., [La.App.], 205 So.2d 721 (existence of hazard for 40 minutes held to be sufficient time to constitute constructive notice.)
"This Court is aware of the jurisprudence which euphemistically proclaims that an occupier of premises is not an insurer of his invites. However, the jurisprudence also is to the effect that: `The occupier thus owes a duty to avoid reasonably forseeable danger to his invitee * * *'" Citing Levert v. Travelers Indemnity Company, 140 So.2d 811, 813 (La.App.3rd Cir. 1966); Richard v. General Fire and Casualty Company, 155 So.2d 676 (La.App. 3rd Cir. 1963).
While we cannot find evidence in the record which specifically proves that these cans of paint were in the aisle for a period of 30 minutes before the accident occurred, we cannot find manifest error in the trial court's holding (1) that the accident occurred 30 minutes after the store opened; (2) Sears employees failed to prove they had checked or cleaned this aisle within this 30 minute period; (3) that this was the rush season and store employees were very busy; (4) that the manager of the paint department knew that customers frequently took one gallon cans of paint from the counters to place them in the aisle so that they might sit on them to rest; (5) that there was no warning or signs posted to forbid customers from removing these cans and placing them in the aisle, nor were there any signs warning customers that there might be cans blocking the passageway; and (6) that there had been customers at the gift wrap counter that morning.
Considering these facts and particularly that although Mrs. Gaspard had not served any customers that morning she could not be certain that she had checked this aisle prior to the occurrence of the accident, we find defendant negligent in that its employees had constructive knowledge of the condition. We also find negligence in the failure of defendant to prohibit customers from placing paint cans in the aisle. The evidence shows that this was a regular occurrence. Alternatively, plaintiff was entitled to a warning to the effect that she should watch her step into the aisle fronting the gift wrap counter because there were likely to be paint cans blocking the aisle.
We distinguish the Lofton case, supra, relied on by defendant, in that the court was there concerned with a virtually invisible spot of clear water on the floor, whereas we are here dealing with an obstruction situated only one step from the entry into the aisle, consisting of two or three one gallon paint cans situated in an aisle only two and one-half feet wide. Secondly, in Lofton there was no special reason for store employees to be on guard for the presence of water in that area. Here, it was well known to defendant that paint cans were commonly placed in the aisle in front of the gift wrap counter, and the dangers that this created were well-appreciated. Yet, no effort was made by defendant to forbid or prevent the common practice, nor was any sign or warning posted of the possible presence of this known hazard.
*500 On the issue of contributory negligence, we adopt the trial court's reasons:
"The Court concludes that the plaintiff was not guilty of any negligence under the circumstances. The Court does not see any substantial difference between the facts in this case and those in Provost v. Great Atlantic & Pacific Tea Company, [La.App.,] 154 So.2d 597, where a patron of defendant's supermarket tripped and fell over boxes located at the end of a counter. The Court in holding that the plaintiff was not contributorily negligent stated that the boxes could not be readily seen as plaintiff negotiated the turn into another aisle. * * *" See Gilliam v. Lumbermen's Mutual Casualty Company, 240 La. 697, 124 So.2d 913; Vogts v. Schwegmann, 56 So.2d 177 (La.App. Orl. 1952).
We find no merit to defendant's argument that plaintiff was negligent for carrying a bundle of packages which obstructed her view. The trial court did not accept Mr. Smith's testimony that the packages came to "about eye level". While it is true that plaintiff could not see straight down to her feet, the evidence indicates that she could see the floor a reasonable distance in front of her. The obstructing objects over which Miss Hay tripped were situated immediately around the corner of the paint counter, and they would not have been visible until she was upon them. She was tripped on her first step around the corner. Had she concentrated her view straight down, she might then be found negligent for failing to look ahead for obstructions at a higher level.
It is on these facts that we distinguish the case of Williams v. Liberty Stores, 148 La. 450, 87 So. 233 (1921) where the customer was found contributorily negligent for failing to see a box of merchandise which had been in full view for a distance of 27 feet.
We quote, with approval, the trial court's opinion on the issue of quantum.
"Dr. Harry Brian, a local surgeon, who administered emergency treatment to the plaintiff at St. Francis Cabrini hospital in Alexandria, testified that he found a large contusion and a laceration in the area of plaintiff's right knee, and that there was swelling over the anterior tibia. The laceration was about one to one and a half inches in length and was sutured by the doctor. X-rays were negative. He applied compressive dressing and released her from the hospital. She returned to work the same day working as a registered nurse at the Veterans Administration Hospital. On December 14th Dr. Brian removed the sutures. She again returned to his office on December 18th complaining of pain in her left leg which was not involved directly in the accident. An analgesic was prescribed. When the doctor again saw the plaintiff on January 29th, there was discoloration over the right knee, and the plaintiff was still complaining of pain in the left leg. He concluded this latter condition was due to her shifting her gait to the left. It was his opinion that as soon as she returned to her normal gait the discomfort in her left leg would stop. He nevertheless advised her to consult an orthopedic surgeon which she did. The orthopedic surgeon gave her virtually the same advice and prognosis concerning the left leg as Dr. Brian did. Dr. Brian further testified that the scar on her right knee resulting from the laceration would be permanent and that the indentations on her shin at the site of the hematoma resulting from her fall would likewise be permanent.
"On trial of the case the Court observed the scar on the plaintiff's knee. It was rather ugly looking and the area around the scar was still discolored. The indentations on her shin, while observable at close range, probably would not be noticed at a distance.
"The evidence shows that the plaintiff suffered pain and discomfort for about three (3) weeks in the right leg and had to walk stiff-legged as well as favor the right leg by placing most of her weight on the *501 left leg causing an abnormal strain on the latter. The left leg bothered her for some weeks after it commenced hurting but this situation subsided when the weather got warmer. The plaintiff testified that during the past winter, on two occasions when the weather was cold and wet, the left leg again "bothered" her.
"She further testified that on the advice of Dr. Lowery, the orthopedic surgeon, she took aspirin when experiencing pain and discomfort in the left leg and that she followed this course of action for several months.
"The plaintiff also testified that the condition of her knee caused her and continues to cause her embarrassment particularly when wearing shorts and that she tries to conceal the scar. The Court believes that she will continue to be embarrassed by the presence of the scar on her knee even if ladies' fashions should dictate that the hemline of dresses take a considerable dip. In any event, dip or no dip, the scar will cause such embarrassment because of its unsightliness when she wears shorts or a bathing suit."
Defendant emphasizes that plaintiff went to work at 2 p.m. on the day of the accident. However, Miss Hay explained that she was only able to do this because she was then assigned to the intensive care ward and did not have to walk as required on general duty. She also explained that the hospital was short of registered nurses at the time and that she elected to work in pain rather than place an additional burden on her co-employees.
Miss Hay did not call as a witness Dr. Cedric Lowrey, orthopedic surgeon of Alexandria whom she consulted on one occasion. Appellant contends that we must therefore presume that had Dr. Lowrey appeared and testified, his testimony would have been adverse to Miss Hay's claim that she suffered pain in her left leg, citing Cloud v. National Surety Corporation, 166 So.2d 31 (La.App.3rd Cir. 1964); Mullins v. Seals, 103 So.2d 582 (La.App.Orl.1958); Brown v. Yellow Cab Company of Shreveport, 94 So.2d 573 (La.App. 2nd Cir. 1957).
Here plaintiff attempted to explain why Dr. Lowrey was not called as a witness by testifying that Dr. Lowrey was of the same opinion as was Dr. Brian; that the trouble with her left leg would clear some time after she could resume her normal gait. Even in these circumstances there is some presumption against plaintiff for failing to call the doctor to testify or to take his deposition. Plaintiff's alternative remedies were to seek to have opposing counsel stipulate to the admissibility of a report or to have opposing counsel agree that there would be no presumption for the failure of plaintiff to call the physician.
The trial court compared this case to Torbet v. Hycalog, Inc., 193 So.2d 878 (La.App. 1st Cir. 1966) where $3,000 was awarded for similar injuries together with other contusions and bruises about the body which healed quickly, and none of which required hospitalization. The court, concluded by awarding $2,000 for general damages for permanent scarring, pain and discomfort, mental anguish, etc. in addition to the special damages stipulated by counsel. We do not find the award manifestly excessive.
For these reasons the judgment of the trial court is affirmed. All costs of this appeal are to be paid by appellant.
Affirmed.