SAVOY, Judge.
This is a suit in tort arising. out of an accident in which a door closed and struck Mrs. Emma Lou Laughlin as she proceeded out of a doorway at a supermarket operated by Tip Top Foods, Inc. at Lake Charles, Louisiana. Mrs. Laughlin sues for her personal injuries, and her husband, Burley Laughlin, joined in the suit for damages sustained by the community between them. Defendants are Tip Top Foods, Inc. and its liability insurer, Zurich Insurance Company. For convenience in writing this opinion, the singular term “plaintiff” will refer to Mrs. Emma Lou Laughlin, and the singular term “defendant” will refer to Tip Top Foods, Inc.
It is alleged ihat on June 29, 1965, plaintiff was leaving defendant’s store after *834 purchasing groceries; that she was required to pass through one of four glass doors in front of the store; that as she was passing through the middle door which was propped open, the door came loose and struck her on the chest, the steel handle of the door hitting her on the left breast and left side knocking her against the frame of another door, causing injuries and disabilities. It is alleged that the accident was caused solely and proximately by the negligence of defendant, its officers, agents and employees, in failing to provide a reasonable and safe exit from the store, in propping the door open and creating the appearance of a safe situation for exit when, as a matter of fact, said door was inadequately and improperly propped open, in failing to warn plaintiff of the danger, and in permitting the door to strike plaintiff.
An answer was filed wherein the allegations of plaintiffs’ petition were generally denied. It was further alleged that Tip Top Foods, Inc., its officers, agents and employees operated the store in a safe and a prudent manner; that the door was propped open to facilitate customers and was propped open in a safe and prudent manner; that defendant did not know, nor did it have any reason to know or believe that the door would not remain propped; that if, in fact the door did not remain propped as alleged, it was due to uncommon and unnatural forces beyond the control of defendant. In the alternative, it was alleged that plaintiff was contributorily negligent in failing to maintain a proper lookout, failing to provide for her own safety in walking through a doorway, in walking through a doorway which had been propped when she knew or had reason to know that a strong wind was blowing and that the door might become un-propped.
After trial on the merits, judgment was rendered in favor of defendants, rejecting plaintiffs’ demands and dismissing their suit. From this judgment, plaintiffs have appealed to this Court
Plaintiffs maintain that the district court erred in the application of law to the facts of this case. It is maintained that the evidence shows' defendant knowingly created or allowed the existence of a hidden danger, trap, or pitfall, constituting a hazard which created an unreasonable risk of harm to business invitees. It is contended that the closing of the door and resulting injury was foreseeable, that defendant violated its duty to warn business invitees of the hazard, and that the condition was one which would not be known or discoverable by a reasonably prudent person using the passageway.
Defendants maintain that the district court correctly held that plaintiffs failed to establish the accident was due to any negligence on the part of Tip Top Foods, Inc., its officers, agents or employees.
The basic facts of this case are not in dispute. At about 10:00 A.M. on June 29, 1965, plaintiff, after purchasing groceries at defendant’s supermarket at 3221 Ryan Street, Lake Charles, Louisiana, proceeded to leave the store at its front entrance through one of four adjacent glass doors. As was customary, all four doors were unlocked and one of the center doors was propped in an open position with two wooden wedges or “chocks”. As plaintiff proceeded through the open doorway, the door suddenly and without warning swung inward, slipping on the chocks, and struck plaintiff, knocking her against the frame of the door or another door, causing her to sustain personal injuries.
The entrance doors were manufactured metal doors, with full glass exposure, which had been in use since the opening of the store by defendant on April 1, 1964. The doors did not have any electrical or automatic door opening devices. At the foot of each door there was attached a door-closer operated by hydraulic pressure. This device pulls the door faster at the beginning and slower as the door closes, keeping the door from slamming onto the sill. The door involved was customarily chocked or propped in an open position *835 with two wooden wedges, described as about ¿4 inch thick at their thickest part. These wedges or chocks were obtained from the manufacturer of the doors at the time the doors were installed and had been in constant use since the store opened.
The store manager, W. D. Baham, testified that the hydraulic door-closer was working effectively at the time of the accident. He testified that one of the entrance doors at the store had been propped in an open position practically every day, weather permitting, with the same two wooden wedges since the store opened. He remembered only one or two occasions from the time the store was opened to the time of the trial in December, 1968, when there was a need to rechock the door to keep it propped open, when someone had bumped or otherwise pushed the door. He stated that no one, other than plaintiff, had been struck by a door in this store. Either he or an employee, Charles Truman Carna-han, chocked the door involved on the day of the accident. He testified there was a strong wind blowing at the time of the accident.
At the time of the accident, Charles Truman Carnaham, who had worked at the supermarket three days a week for less than a year, was carrying the groceries purchased by plaintiff in a buggy, following behind plaintiff, and saw the door began to close. He reached across the buggy to try to prevent the door from closing and also shoved the buggy against the door for this purpose, but was unsuccessful. He stated the door just slipped on the chocks, since no one had hit it. He testified that on a few occasions the door had to be re-chocked because someone hit or shoved it, but he had never known it to close before without being struck. He testified a blue “norther” had just come through, the rain had just stopped, and the wind had apparently caused the door to close, with the chocks or wedges sliding with the closing of the door. He estimated that the door weighed about 250 pounds. He did not know of any other accident of this nature at the store. After the accident, he asked plaintiff if she was hurt, and she replied that she was. He then took her to see the store manager.
Plaintiff testified that she had been shopping in the store, accompanied by her son, Roger, age 13, and that she had shopped in the store on previous occasions. She also stated that she had conducted demonstrations in the store at prior various times for Walker Farms, Inc. She was familiar with the four glass doors at the front of the store, and with the fact that one of the doors was kept open all year round. She testified she thought the bag boy went through the closed door to the right of her, and as she proceeded through the open doorway, the door slammed shut real hard, striking her on the left breast and the left side of her head, knocking her against another door or against the framing of the door. After being struck, she slumped down on the concrete sidewalk at the doorway.
Plaintiff’s son, Roger, testified he proceeded out of the doorway in front of his mother and did not actually see the accident occur. After he proceeded out, he turned around and saw two boys helping his mother up from the sidewalk. He testified there was a strong wind blowing at the time in a direction which would tend to blow the door to a closed position. He testified he did not hit the door. He also stated he noticed pieces of crate spread out on the concrete, which had apparently been used to hold open the door. He did not pick up or examine the chocks or pieces of crate.
In Hay v. Sears, Roebuck & Company, 224 So.2d 496 (La.App. 3 Cir. 1969), this Court stated the rule of law applicable to this type of case to be:
“The law applicable to the facts and circumstances presented herd is well established. A proprietor owes a duty to his customers to use ordinary care to keep his aisles, passageways and floors in a reasonably safe condition. Although the *836 law imposes a duty of reasonable care by the proprietor toward his customers, the storekeeper is not the insurer of their safety while on his premises. In order to impose liability on a storekeeper or proprietor the plaintiff must prove by a clear preponderance of evidence that a dangerous condition, which caused injury to the plaintiff, was :
“(1) created or maintained by the storekeeper or one of his employees; or
“(2) if not created by the storekeeper or one of his employees, that (a) the storekeeper or one of his employees had actual knowledge of the dangerous condition, or (b) the dangerous condition had remained long enough for the storekeeper to have constructive knowledge of the condition. * * *” (Citations omitted.)
The issue in this case is whether or not defendant was negligent in failing to keep the store premises in a reasonably safe or suitable condition, or in failing to warn plaintiff of a hidden or concealed peril which it knew or should have known in the exercise of reasonable care, or in creating an unreasonable risk of foreseeable harm to its business invitees. In this connection the burden is on plaintiff to prove by a preponderance of the evidence that the duty owed by the storeowner was not fulfilled or to show defendant was otherwise negligent in some manner.
In considering whether defendant was negligent in this case, it is noted that plaintiff does not contend, and there is no evidence showing, there was any defect in the particular door involved, its door-closing device or the chocks used. The record shows that defendant had installed and was using the door and equipment, including the chocks to hold open the door, in the manner for which they were manufactured. There was no showing that this equipment was defective or being used in a negligent manner. Instead, the evidence shows that a strong wind was the immediate cause of the door closing when it did.
After reviewing facts of this case in light of the above jurisprudence, this Court finds that it agrees with the holding of the district court.
According to the allegations of plaintiffs’ petition and the evidence presented, if there was any negligence on the part of defendant, its officers, agents or employees, it was a failure to chock or prop open the door sufficiently so as to avoid its closing, even under the pressure of a strong outside wind, or in this connection, the failure to investigate and determine that the door might be blown shut by the existing weather conditions at the time.
However, defendant, through its officers, agents or employees, propped the door open by use of manufactured chocks designed for that purpose, as it had done for six days a week for about fifteen months through varying weather conditions, and the evidence shows that this procedure had worked satisfactorily without incident. The employees of defendant regularly passed by or through the door throughout each workday, inspecting the condition either consciously or unconsciously, and there had been only a few occasions when the door needed to be re-chocked because someone struck or hit the door. The manner of propping the door in an open position was not shown to constitute negligence. There was no evidence that the method used had previously failed because of a strong wind alone. Under these facts, this Court does not find that defendant failed to exercise reasonable care for the safety of its invitees. Nor do we find that these facts show an unreasonable risk of foreseeable harm to business invitees, or that they constitute a hidden or concealed peril which defendant knew or should have known in the exercise of reasonable care. And without such, there could be no requirement for notice to an invitee.
From the facts and circumstances of this case, this Court finds that plaintiff failed to establish that her injuries were due to *837 any negligence on the part of defendant, its officers, agents or employees or to its failure to fulfill any duty to her; and, accordingly, the judgment of the district court should be affirmed.
For the reasons assigned, the judgment of the district court is affirmed with all costs of appeal assessed to appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
TATE and MILLER, JJ. not participating.