FRUGÉ, Judge.
This is an action to recover damages for personal injuries sustained by the plaintiff, Marcelle Odet Guthrie, and for community expenses incurred by her husband, John C. Guthrie, as the result of an alleged slip and fall of Mrs. Guthrie while shopping in defendant, Winn-Dixie’s supermarket in Jennings, Louisiana, on October 5, 1968. The trial court awarded Mrs. Guthrie $4,-000.00 for personal injuries, and Mr. *391 Guthrie $1,051.50 for special damages incurred by the community. The defendants have appealed suspensively from the trial court’s judgment.
The evidence reflects that sometime between 8:00 and 8:30 A.M. on Saturday, October 5, 1968, Mrs. Guthrie and her daughter, Mrs. Linda Tracey, entered the defendant’s store to shop for groceries. Mrs. Guthrie and her daughter had selected the items that they wished to purchase and were in the process of being checked out when Mrs. Tracey requested her mother to get a particular type of soap for Mrs. Tracey to include in her purchases. While on the way to the soap section Mrs. Guthrie allegedly slipped on a wet spot on the floor and fell.
Defendants contend that the trial court erred in finding the defendants “guilty of negligence which was a proximate cause of the plaintiff’s injury.”
In the recent case of Hay v. Sears, Roebuck & Company, 224 So.2d 496, 498 (La.App. 3rd Cir. 1969), this Court stated the standard of care that a business establishment owes its customers as follows:
“The law applicable to the facts and circumstances presented here is well established. A proprietor owes a duty to his customers to use ordinary care to keep his aisles, passageways and floors in a reasonably safe condition. Although the law imposes a duty of reasonable care by the proprietor toward his customers, the storekeeper is not the insurer of their safety while on his premises. In order to impose liability on a storekeeper or proprietor the plaintiff must prove by a clear preponderance of evidence that a dangerous condition, which caused injury to the plaintiff, was:
“(1) created or maintained by the storekeeper or one of his employees; or
“(2) if not created by the storekeeper or one of his employees, that (a) the storekeeper or one of his employees had actual knowledge of the dangerous condition, or (b) the dangerous condition had remained long enough for the storekeeper to have constructive knowledge of the conditipn.
“Lofton v. Travelers Insurance Company, 208 So.2d 739 (La.App. 3rd Cir. 1968); Jones v. W. T. Grant Company, 187 So.2d 470 (La.App. 3 Cir. 1966); Peters v. Great Atlantic & Pacific Tea Company, 72 So.2d 562 (La.App. 2nd Cir. 1954.)”
In the instant case the plaintiffs contend that a dangerous condition created by one of Winn-Dixie’s employees caused Mrs. Guthrie’s accident. The testimony of Joel Richert, an employee of Winn-Dixie at the time of the accident, shows that he mopped the floor of the Winn-Dixie store sometime between 7:00 and 8:00 A.M. on the morning of the accident. He only mopped selected areas, including the spot where Mrs. Guthrie supposedly fell, rather than the entire store, as reflected by his testimony at page 112 of the record:
“Q. Who was going to help you in the mopping operations?
“A. I’m the only one that mopped.
“Q. In other words, it was your responsibility to mop all of the floors in that entire building ?
“A. On Saturdays, I only got certain places because 1 there a little later, so I’d only mop certain places on Saturday.
“Q. Now what places were you supposed to mop on Saturdays? That particular Saturday?
“A. The meat aisle, the produce aisle, the soap aisle and the front of the store by the check out stands.”
The above testimony indicates that Rich-ert was ordinarily rushed to get his mopping done on Saturday morning before the store opened. Although he could not recall the specific morning in question, he was reasonably sure that he started the mop *392 ping operation by 7:10 A.M., and that it took him about 40 minutes to complete the job (Tr. 112).
The evidence shows that Mrs. Guthrie and her daughter entered the store just after it opened, and that there were very few customers in the store at the time of the accident. Therefore, it is most probable that any water on the floor was placed there by the mop-boy rather than a third party.
Mrs. Guthrie was the only witness to testify that she actually fell although both she and her daughter testified that her dress was wet when she came back to the check out stand. The cashier, Mrs. Linda Tra-han, did not notice that Mrs. Guthrie’s dress was wet although Mrs. Guthrie, looked embarrassed and was holding her head when she returned to the check out stand, and she informed Mrs. Trahan that she had fallen in the soap aisle. Mrs. Guthrie and her daughter then left the store, and Mrs. Trahan reported the accident to the store manager, Mr. Earl Do-mingue, about 30 minutes later. Mr. Do-mingue inspected the area where Mrs. Guthrie was supposed to have fallen, but could find no evidence of water or any other substance on the floor. Since his inspection took place approximately thirty minutes after the fall occurred, it does not refute the direct testimony that there was water on the floor earlier.
The plaintiff was inconsistent in her testimony as to the exact spot where she fell, but the trial court was evidently impressed with her overall testimony, whereas it expressed misgivings about Mr. Domingue’s testimony. Mrs. Guthrie had testified that while lying on her back immediately after the fall, she saw Mr. Domingue looking at her from the open office. Mr. Domingue denied that he saw her. But, from the spot where she fell her view of the office, where Mr. Domingue would have been, was just as she described it in her testimony.
We conclude that the trial court’s factual determination that the water was placed on the floor by Winn-Dixie’s employee, Joel Richert, and that Mrs. Guthrie slipped on this water was not manifestly erroneous in view of the circumstances and facts indicated above.
 The defendants also contend that the trial court’s award of $4,000.00 for personal injuries was excessive. It is well settled that the trial court has great discretion in awarding general damages. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). There is evidence that Litrs. Guthrie experienced considerable pain and discomfort while being treated over an extended period of time and was still experiencing discomfort at the time of the trial, some 13 months after the accident. Dr. Louis E. Shirley’s testimony beginning at page 195 of the record reflects Mrs. Guthrie’s general condition :
“A. * * * I saw her on October 7, 1968.
“Q. And just exactly what history did you elicit from her and what treatment did you give her at that time, sir ?
“A. At the time I saw her, she gave me a history that she had slipped while at Winn-Dixie and she fell hurting her right side and her right hip and lower back and face. On examination, I found that she had some bruises on the right shoulder and the hip was rather tender, and she had a spot on her right temple, with some bruises on the right temple. X-rays were taken of these areas at the time and there were no fractures found.
“Q. And what was your recommendation or conclusion as a result of that examination?
“A. I felt like the treatment should be ultrasound, diathermy, analgesic *393 drugs, and she was followed for some time with this type treatment, and then on October 21, we re-evaluated the case trying to see how we stood with the treatment. Reflexes were all normal, so we were a little bit worried about a ruptured disc. She was having some pain in the sciatic nerve and in the hip, but the reflexes were all normal and the Kernig’s was negative at that time. We felt like it was probably just still from the injury itself from the fall. Then in January when I saw her again — she had some diathermy a couple more times in October. Then we didn’t see her again until January. She came in January 22 then was examined at that time and found to have some low back pain in the sacral area and up to the third lumbar. She was given a camp brace at this time, a brace for the lower back, and given some muscle relaxant drugs, some exercises such as probably most orthopedists and most general practitioners recommend these flexion exercises for lower back strain. She appeared to have chronic low back strain at this time. And she was also asked to continue the diathermy. She came several times then, but then was not seen again and a report was sent in in March to the insurance company on her because we hadn’t seen her, and we weren’t sure what the circumstances were, so we just sent a note that she must be well because we hadn’t seen her. But then we saw her again in May with complaints again of the low back and was placed on diathermy some more, flexion exercises at that time. This I might add was a result of Dr. Morin’s letter to me and the fact that she was still complaining. He had sent her back to me for the treatment.”
Dr. Norman P. Morin of Lake Charles, Louisiana, was the only other physician to treat Mrs. Guthrie. His conclusions are reflected by his testimony beginning at page 52 of the record:
“O. Doctor, as I understand your testimony, you felt that all that she had sustained was a lumbosacral strain, is that correct ? ■
“A. That’s correct.
“O. Just exactly how painful and how disabling is that type of an injury normally, Doctor ?
“A. Lumbosacral strains can be quite painful and can be quite disabling. Most people use the term ‘just a pulled muscle’. Well, a pulled muscle can be, as I have just stated, very painful sufficiently to keep a patient in bed for several days or even weeks.
“Q. Now, what category would you place this pulled muscle or these pulled muscles in, Doctor, in this case?
“A. We usually classify an injury such as a pulled muscle in the low back or in the neck as mild if there is recovery within six months. This individual injured herself, as I have stated, on October 5, 1968, and I saw her the first time on May 9 and the second time on July 21. She, on those two visits, still exhibited evidence of residual muscle spasm and painful motion and tenderness in the low back. Therefore, this would classify her within the range of a moderately severe injury to the muscles of the low back.”
In view of the testimony of Dr. Shirley and Dr. Morin, we do not find that the *394 trial court’s award of $4,000.00 for personal injuries was an abuse of its discretion.
For the foregoing reasons the judgment of the trial court is affirmed at the defendants-appellants’ costs.
Affirmed.