GARGARO v. KROGER GROCERY & BAKING CO.—118 S. W. (2d) 561.

Western Section. February 18, 1938.

Petition for Certiorari denied by Supreme Court, May 12, 1938.

Scott Fitzhugh and William O. Gordon, both of Memphis, for plaintiff in error.

Frazer & Clifton, of Memphis, for defendants in error.

W. P. MOSS, S. J.—Plaintiff in error, Julius Gargaro, executor of the will of Lucretia Le Riemondie, sued defendant in error, Kroger Grocery & Baking Company, in the Circuit Court of Shelby County

to recover damages for personal injuries sustained by his testate when she fell while shopping in the store of defendant in error, and from which injuries she died. The nomenclature of the trial court will be followed. On the trial the defendant moved for a directed verdict at the close of all the evidence, which motion was overruled and there was a jury verdict and judgment thereon for the plaintiff. On motion for a new trial, the learned trial Judge sustained the ground thereof challenging his failure to grant the motion for a directed verdict, then granted the motion and dismissed the suit. Plaintiff made his motion for a new trial, which was overruled, and he has prayed and perfected his appeal in error to this Court.

The facts, concerning which there is no substantial dispute, are as follows:

The defendant, Kroger Grocery & Baking Company, operated a retail store on what is generally known as the self-service plan. A customer on entering the store would secure a market basket with a handle, in which to put the merchandise thereafter selected, the baskets used for that purpose being placed in a convenient bin or receptacle near the front of the store. The store had several shopping aisles between counters or shelves containing groceries, fruits, cakes, and other edible items, all attractively arranged; and through these aisles the customers passed with their baskets, selecting their own merchandise without assistance or interference from employees of the store, placing the merchandise selected in the baskets, and returning with the baskets to a checking counter near the front of the store, where their merchandise was checked, placed in sacks and paid for. There was a meat counter in the rear of this particular store, and a cake counter near the front of the store and close to the aisle used by customers in passing the checking counter. The aisle in which plaintiff's testate fell was about five feet wide.

On Saturday, December 12, 1936, Mrs. Sarah Tanner was a customer in the store, entering about five o'clock P. M., when the store was crowded. Mrs. Tanner secured one of the baskets, selected several items of merchandise, and after passing through several of the aisles her basket became heavy and she placed it on the floor against the cake counter, in accordance with her custom. She remembered that she wanted to buy some meat and returned to the meat counter in the rear of the store, leaving her basket on the floor by the cake counter. She remained at the meat counter, either talking to acquaintances or waiting for her turn to be served, from twenty to thirty minutes, before she heard that some one had fallen in the front of the store and returned to find that plaintiff's testate had fallen over her basket. When asked about the accident, Miss Le Riemondie said that she had come to the cake counter, was reaching up to get a package of cakes, then wanted to go back to the vegetable counter just ahead, some six or seven feet beyond the checking coun-

ter, and asked a lady to let her by or pass, and when the lady stepped aside, she either moved or pushed a basket in her way and she fell over it.

It is undisputed that the baskets used by customers in the store belonged to the store and were necessary parts of the equipment of a self-service store; that the merchandise in the store was the property of the store until paid for by the customer at the checking counter; that it was the custom of patrons of the store to leave their baskets in the aisles or passageways of the store and was their privilege to do so whenever they pleased; and that no counters, tables or supports of any kind were provided by the defendant on which such baskets could be placed, and no warning or notice forbidding the practice of putting baskets on the floor was ever given by the defendant. Deceased had been a regular customer of the store for four years, Mrs. Tanner and other witnesses who testified were also regular customers, and all of them had at times left baskets on the floor and were familiar with the practice.

The motion for a directed verdict in favor of the defendant was based on the following grounds:

1.  There was no proof of negligence on the part of the defendant.

2.  There was no proof that the defendant was guilty of negligence proximately causing the accident and resulting in the injury to and death of plaintiff's testate.

3.  Contributory negligence of plaintiff's testate.

4.  The injuries sustained were not shown to have been a natural and proximate cause of her death.

5.  The proof affirmatively shows that an independent, intervening agency, over which the defendant had no control, proximately caused and occasioned the accident and injuries.

6.  That plaintiff's estate was guilty of contributory negligence "and likewise assumed any risk incident to shopping in the store of defendant in which she sustained the accident sued on."

In granting the motion for a new trial and directing the verdict for the defendant, the trial judge stated that he did so for two reasons, (1) that the maxim "volenti non fit injuria" or assumption of risk applied, and (2) that there was no proof of actionable negligence on the part of the defendant.

There are nine assignments of error, and all of them complain of the action of the trial judge in granting the defendant's motion for a directed verdict at the close of all the evidence and in directing the jury to return a verdict in favor of the defendant. We concur in the views of the learned Circuit Judge, for the reasons hereinafter set out.

It is not suggested that any positive act of negligence was committed by the defendant or any of its employees or servants, but it is

74

earnestly insisted that the custom or practice of permitting defendant's customers to place their baskets upon the floor was in itself an act of negligence, and that in this particular case permitting the basket of Mrs. Tanner to remain on the floor from twenty to thirty minutes constituted negligence, or that at least the jury should be allowed to say whether or not under these circumstances the defendant was negligent or plaintiff's testate contributorily negligent. It is argued that plaintiff's testate's injuries were proximately caused by the concurrent negligent acts of the defendant in permitting the basket to remain on the floor and of another of its customers in kicking the basket in front of plaintiff's testate and that defendant's negligence was the proximate and efficient cause.

On the other hand it is insisted by defendant that the practice of placing baskets upon the floor in this and in other similar stores is a reasonable one and that it would be impossible to prohibit it; that it was a practice with which the deceased was thoroughly familiar and that she assumed any risk resulting from this practice or custom when she entered the store, and that her own contributory negligence proximately caused the accident resulting in her injuries and death. It is also insisted that when the basket was kicked by another customer of the store, this was an act of an independent, intervening agency and not the act of an agent for whom the defendant is responsible.

█ █ The proprietor, owner, or management of a retail store such as that operated by the defendant in this case is under an obligation to exercise ordinary care and diligence to maintain the premises in a reasonably safe condition for the patrons or customers of the store, who enter and remain therein as invitees. Such a proprietor or owner is not an insurer of the safety of customers in the store, but is liable only if injury results from a branch of the duty to use or exercise ordinary care for their safety and protection. Such is the rule in Tennessee, and it is well nigh universal in America. Buckeye Cotton Oil Co. v. Campagna, 146 Tenn., 389, 394, 242 S. W., 646; Loew's Nashville & Knoxville Corp. v. Durrett, 18 Tenn. App., 489, 79 S. W. (2d), 598; Bennett v. Louisville & N. R. Co., 102 U. S., 577, 26 L. Ed., 235; Armstrong v. Kroger Grocery & Baking Co., Mo. App., 78 S. W. (2d), 564; Kresge Co. v. Fader, 116 Ohio St., 718, 158 N. E., 174, 58 A. L. R., 132; Annotations, 61 A. L. R., 1289.

█ █ Under this rule, liability ensues if an invitee is injured as a result of latent defects in flooring or hidden sources of danger; if obstructions are negligently placed in aisles by employees, as in Armstrong v. Kroger Grocery & Baking Co., supra; if placed there by others and allowed to remain when the defendant has knowledge of the fact or the circumstances are such that by the exercise of ordinary care the defendant should have known the obstruction was present; and in similar cases.

■ Such a duty on the part of the proprietor or management of the store does not relieve the customer or invitee of the duty of exercising ordinary care for his or her own safety; and upon failure to do so, the invitee is deemed contributorily negligent. This is a fundamental rule of the law of negligence, and requires no citation of authority.

■■ In approaching the merits of this case in the light of the above fundamental rules, we are mindful of another fundamental doctrine which prevails in Tennessee—that in considering a motion for directed verdict on behalf of the defendant, the inquiry should be whether there is any material evidence which, together with all reasonable inferences favorable to the plaintiff which may be drawn therefrom, reasonably tends to support the cause of action as stated in the plaintiff's declaration and as shown by the proof. If there is any such material evidence, the jury should be allowed to decide, upon a proper charge, whether the defendant is negligent or the plaintiff contributorily negligent.

■■ The doctrine of assumed risk, sometimes (as in Hatch v. Brinkley, 169 Tenn., 17, 80 S. W. (2d), 838), referred to as incurred risk, is usually applied to contract cases growing out of the relation of master and servant, but such is not always the case. The application of the doctrine is often simply another way of applying the rule of contributory negligence, and frequently the difference between the two is merely a difference in the choice of language or style of expression. In other words, the fact that one knows of potential danger and voluntarily subjects himself thereto may and often does render him contributorily negligent if accident or injury ensues. An appropriate statement along these lines is found in Loew's Nashville & Knoxville Corporation v. Durrett, 18 .Tenn. App., 489, at page 503, 79 S. W. (2d), 598, wherein it is said by presiding Judge Faw (page 606):

"An invitee may rely upon the safety of the premises, if he is not aware of the danger (Rosenbaum v. Shoffner, 98 Tenn., 624, 633, 40 S. W., 1086), or there is no reason to apprehend danger (Ellis v. Cotton Oil Co., 3 Tenn. Civ. App. [3 Higgins], 642).

"In the case of Bouchard & Sons Co. v. Keaton, 9 Tenn. App., 467, the plaintiff sued for damages on account of injuries to his person caused by being hit by a piece of steel dropped by men working on a bridge. The evidence showed that plaintiff went to work under the bridge knowing that things might be dropped by the workmen above. It was held that he assumed the risk of the position and could not recover.

"In the opinion in the case just cited, this court said:

" 'In strictness, the technical doctrine of "assumption of risk" applies perhaps only to the contractual relation of master and ser-

vant, but one frequently finds in opinions of the courts the expression "assumption of risk" as the practical equivalent of the term "contributory negligence." 20 R. C. L., p. 109, section 95.

" 'In 45 Corpus Juris, p. 944, section 503, it is said:

" ' 'While, under certain circumstances, the same acts or conduct may render one guilty of contributory negligence or give rise to the defense of assumption of risk, "assumed risk" and "contributory negligence" are distinct doctrines of law, and are not synonymous. The doctrines are distinguished from each other elsewhere in this work. In common parlance, however, the reckless disregard of a danger is often spoken of as an assumption of risk by the party exposing himself thereto, although it is not the ordinary assumption of risk arising out of contract relations.'

" 'And it has long been the law, based on the ancient maxim, volenti non fit injuria, that one who voluntarily places himself in a position of peril, knowing and appreciating the danger, assumes the risk thereof. Broom's Legal Maxims (8th Ed.), p. 267 et seq. . . .

" 'In Standard Oil Co. v. Titus, 187 Ky., 560, 563, 219 S. W., 1077, the court said:

" ' ' "In view of the fact that the doctrine of assumed risk is not based entirely on contract, but grows out of the application of the maxim, 'Volenti non fit injuria,' it is well settled that independently of the relation of master and servant, there may be a voluntary assumption of the risk of a known danger which will bar one from recovering compensation in case of injury, even though he was in the exercise of due care.' "

" 'The statement of the law last quoted was approved and applied in the case of McLoed Store v. Vinson, 213 Ky., 667, 281 S. W., 799, 800. And the same principle was announced and applied in the case of McLean v. Studebaker Bros. Co., 221 N. Y., 475, 117 N. E., 951, 1 A. L. R., 1551, 1553.' " Loew's Nashville & Knoxville Corp. v. Durrett, 18 Tenn. App., 489, 503, 79 S. W. (2d), 598.

In the instant case the defendants had three employees—the checker, the manager and the clerk at the meat counter. It is not disputed that each of them was very busy, the checker having a line of customers waiting to be checked out, the meat counter being crowded and the clerk busy there, and the manager busy in the rear of the store at his desk. Neither of them had actual knowledge of the fact that the basket which tripped deceased was on the floor or had been there. It is suggested in brief that because the basket had remained in the aisle from twenty to thirty minutes, employees of the defendant by the exercise of ordinary care should have known it was in the aisle and should have removed it. But time alone cannot be made the test of constructive notice that the basket was there, and in view of other circumstances herein referred to, we do

not think that by any reasonable inference the defendant can be charged with notice of the fact that this basket was in the aisle because it had been there from twenty to thirty minutes, or that, conceding constructive knowledge of the fact it was there, a failure to remove it could be considered actionable negligence. It is undisputed that customers of this store, as well as those of all other self-service stores in Memphis, were allowed to, and, as a practice did, place their baskets upon the floor in any aisle at any time they desired to do so. The most characteristic feature of defendant's method of doing business was the fact that its customers selected their merchandise themselves, went about the store without interference from employees or attendants, and without their unsolicited assistance. Defendant's employee personnel was therefore small, and it could no doubt offer its merchandise at more attractive prices than competitors with greater overhead expense. Each customer of the defendant who testified stated that she knew of this practice and that she frequently placed her shopping basket on the floor in the aisles. Deceased herself had been seen placing her basket on the floor at times. Deceased was an unusually intelligent woman—a teacher of music, earning from $150 to $200 per month. She had been a regular customer of defendant's store for four years, and was well acquainted and familiar with the prevailing practice of which her executor now complains. There is no complaint that the store was not well lighted.

If it be said that the accidental kicking of the basket in the path of the deceased was the natural and probable consequence of the practice of allowing customers to place their baskets in the aisles of the store—such a consequence as might and ought to have been forseen by the defendant as likely to flow from the practice, then it must be also said, with the same degree of verity, that it was a consequence which might and ought to have been forseen by plaintiff's testate as likely to flow from a practice with which she was thoroughly familiar. And so, we think the doctrine of "volenti non fit injuria" or assumption of risk, does apply to this case, and that plaintiff's testate assumed the risk of any dangerous consequence which could reasonably be forseen from the practice of customers of this store placing their shopping baskets in its aisles. Either she was negligent herself in stepping on or into the basket or, if some one else kicked or pushed it in front of her suddenly and without warning, then her injuries and death were proximately caused by the independent, intervening negligent act of a third party, without concurring negligence on the part of the defendant.

The cases of Bouchard & Sons Co. v. Keaton, 9 Tenn. App., 467, 481, and Loew's Nashville & Knoxville Corp. v. Durrett, 18 Tenn. App., 489, 503, 79 S. W. (2d), 598, and numerous cases reviewed

in both of them, are referred to for authorities applying "volenti non fit injuria" independently of the relation of master and servant.

The judgment of the Circuit Court is affirmed.

Senter and Ketchum, JJ., concur.