# J. B. EVANS v. NASHVILLE UNION STOCKYARDS, Inc. et al.—292 S. W. (2d) 521.

Middle Section.  April 27, 1956.

Petition for Certiorari denied by Supreme Court July 20, 1956.

66

Gracey, Steele & Buck, Nashville, for J. B. Evans.

Goodpasture, Carpenter & Dale, Nashville, for Nashville Union Stockyards, Inc.

FELTS, J.  J. B. Evans, while walking in the Nashville stockyards in an aisle where cattle were being driven, was struck and injured by a stampeding steer. To recover for his injuries, he sued the owner of the premises, Nashville Union Stockyards, Inc. (hereinafter called "Stockyards"), and the Watkins Commission Company, Inc. (hereinafter called the "Company"), and Ray Stone, alleged to be in control of the cattle.

Plaintiff charged that the Stockyards, as owner of the premises, owed him, as an invitee, a duty to use due care for his protection; that it breached this duty and was negligent in allowing a highly dangerous condition to be created, by permitting cattle to be turned loose and driven down the aisle where plaintiff and other invitees were walking, without giving them any warning of the danger.

Plaintiff further alleged that the Company, through its servant, Ray Stone, was in charge of this particular group of cattle and negligently drove them into this aisle, where plaintiff and others were walking, "knowing full well the danger to plaintiff and others of having said cattle driven down said passage way"; and that by the negligence of defendants in the particulars above stated, a steer broke loose from this group, ran down the aisle, struck plaintiff and seriously injured him.

All of the defendants pleaded not guilty. The case was tried before the Trial Judge and a jury. At the close of the evidence for plaintiff, the Trial Judge directed a verdict for defendants, and entered judgment dismissing the suit. Plaintiff appealed in error, and the sole question presented here is whether the evidence was sufficient to take the case to the jury.

▮ In considering this question, we are bound by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the evidence for plaintiff as true, allow all reasonable inferences therefrom in his favor; and if then there is any legal basis for a verdict for him, we must reverse and remand for a new trial. Tyrus v. Kansas City, Ft. S. & M. R. Co., 114 Tenn. 579, 86 S. W. 1074; Finchem v. Oman, 18 Tenn. App. 40, 49, 50, 72 S. W. (2d) 564.

▮ The Nashville Stockyards is located between Second Avenue and Third Avenue, its north end bordering on Gay Street and its south end bordering on the railroad tracks. At the north end are unloading pens where farmers and livestock dealers unload cattle to be sold for them by the brokers or commission agents. From these unloading pens there is an aisle which extends south some 300 feet to the weighing pens located

on the railroad track. This aisle is about 15 feet wide and on each side of it are cattle pens, which are leased by the Stockyards to commission agents.

After cattle are unloaded into these unloading pens, they are taken in charge by the brokers and driven along this aisle to the pens of such brokers to be sold for the farmers. During the busy season cattle are being constantly driven along this aisle, while farmers, livestock dealers, commission agents, and other employees are walking back and forth along this aisle; and there is constant noise and bellowing of cattle and hollering and shouting of persons in the aisle and the pens alongside it.

Cattle being driven through this aisle often stampede, or one breaks away from the herd, and runs down the aisle, endangering persons walking or standing in the aisle. It is necessary for such persons to be on lookout at all times for such danger; and, to protect themselves, many of them carry sticks—walking sticks or "shock sticks" equipped with a battery so as to shock an unruly animal. And it is customary for them to shout warnings to persons who are threatened with danger by such animal.

Such had been the physical situation of the premises and the method of doing business there for the last 30 years or more. Plaintiff had been coming to the stockyards since 1939 and was familiar with this situation and this method of doing business. On previous visits he had seen cattle stampede in the aisle, and heard people shout "Look out, cattle", and had often climbed the fence himself to avoid the danger. The accident to plaintiff happened about noon on Monday, September 21, 1953, which was the busiest day of the week for cattle traffic in the stockyards.

Early that morning plaintiff and his brother-in-law, Mr. Maples, brought a truck load of steers and unloaded them in the unloading pen. Later they came back to the stockyards "to see how the cattle was weighing out and the general condition of the market". They entered at the north end of the aisle and walked south along the aisle about two-thirds of the way to the weighing pens. Cattle were constantly being driven along the aisle with the usual noise, bellowing, and shouting. Plaintiff and Mr. Maples were walking side by side in the aisle, Mr. Maples carrying a stick, plaintiff walking on the left side within two or three feet of the fence or loading pens.

A herd of cattle consigned to defendant Company were being driven by the Company's servant, Ray Stone, from the unloading pen along this aisle to the Company's cattle pen. All of a sudden, without any previous indication of trouble among these cattle, one of them broke away from the herd and started running down the aisle toward plaintiff. Two or three persons saw this steer and shouted warnings to plaintiff. Mr. Maples heard them but plaintiff did not, and he did not know of the danger until the steer, undertaking to run between him and the fence, struck him, knocked him down, and seriously injured him.

Such are the facts upon the view of the evidence most favorable to plaintiff. Considering these facts, with all reasonable inferences therefrom in his favor, we think they were insufficient to permit a finding by the jury of any negligence on the part of defendants—insufficient to show a breach by any of them of any duty owing to plaintiff.

■ Discussing the duty of care owing by an owner or possessor of premises to a business visitor or invitee, Professor Prossor, in his excellent work on Torts, says:

"The possessor is not an insurer of the safety of business visitors, and his duty extends only to the exercise of reasonable care for their protection. There is no liability for harm resulting from dangerous conditions of which he does not know, and which a reasonable inspection would not have discovered, or from conditions from which no unreasonable risk was to be anticipated. Likewise, in the usual case, there is no obligation to protect the visitor against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be able to protect himself" (Prosser, Torts, (1941 ed.) 642).

One of the authorities cited by the author for the proposition that the possessor owes no duty to protect the invitee against known or obvious dangers, is Illinois Cent. R. Co. v. Nichols, 173 Tenn. 602, 118 S. W. (2d) 213. There, it was held that an owner owed no duty to an invitee to protect him from a danger obvious or as well known to him as to the owner. It was said that "Liability is grounded on the *superior knowledge* of the owner of the danger to the invitee"; that " 'there is no liability from dangers *that are obvious, or as well known to the person injured as to the owner.' "* 173 Tenn. 615, 118 S. W. (2d) 217.

In Philips v. Harvey Co., 196 Tenn. 174, 264 S. W. (2d) 810, 812, the Court quoted approvingly from the Nichols case as follows:

" 'It is unnecessary to cite authority for the proposition that mere ownership or occupancy of

premises, here a car, does not render one liable for injuries to persons entering them; the owner is not an insurer, even when the visitor is an invitee. Liability is grounded on the superior knowledge of the owner of the danger to the invitee. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted.' Illinois Cent. R. Co. v. Nichols, 173 Tenn. 602, 615, 118 S. W. (2d) 213, 217.''

On plaintiff's previous visits to the stockyards he had seen the danger with which persons in the aisle were threatened with stampeding cattle, and which resulted in his injury. This danger was obvious and as well known to him as to the defendants. Under the above authorities, they owed him no duty to protect him against these dangers which were obvious and known to him and the risk of which he voluntarily assumed. Bouchard & Sons Co. v. Keaton, 9 Tenn. App. 467; Gargaro v. Kroger Grocery & Baking Company, 22 Tenn. App. 70, 76, 118 S. W. (2d) 561.

Learned counsel for plaintiff cite cases from other jurisdictions where persons in charge of animals were held liable to spectators or members of the public for injuries caused by such animals. All of such cases, however, differ in their facts from the case before us, and we think none of them is authority in this case.

So, we think there was no evidence of any negligence on the part of defendants, and the Trial Judge properly directed a verdict for them. All of the assignments of error are overruled and the judgment of the Circuit Court is affirmed. The costs of the appeal in error are adjudged against plaintiff and the surety on his appeal bond.

Hickerson and Shriver, JJ., concur.