Violet PARKER and H. C. Parker,
Plaintiffs-Appellees,

v.

Bill WARREN, d/b/a Warren Enterprises
et al., Defendants.

Bill WARREN, d/b/a Warren Enterprises,
Defendant and Third-Party Plain-
tiff-Appellant,

v.

William Austin NAILLING, d/b/a Nailling
Mill & Lumber Company, et al., Third-
Party Defendants-Appellees.

Court of Appeals of Tennessee,
Western Section.

Sept. 4, 1973.

Certiorari Denied by Supreme Court
Jan. 7, 1974.

James M. Glasgow, Elam, Glasgow, Tanner & Acree, Union City, for the appellant Warren, etc.

Miles & Miles, Union City, for plaintiffs-appellees.

Heathcock & Burcham, Union City, for third party defendants-appellees.

MATHERNE, Judge.

The plaintiff Violet Parker accompanied by her husband H. C. Parker, her son and his family, attended a wrestling match at Union City, Tennessee. The plaintiff suffered serious personal injuries when a board upon which she was seated, the same being a part of the bleachers provided for patrons of the event, broke, causing the plaintiff to fall about six or eight feet and land on a concrete floor. The plaintiff sued for damages due to these injuries, and her husband sued for loss of services and expenses incurred.

The plaintiffs sue the defendant C. O. Berry, owner of the premises, and the defendant Bill Warren d/b/a Warren Enterprises as the promoter of the wrestling match. The plaintiffs allege the bleachers were under the exclusive control of the defendants, and the defendants failed in their duty to keep the bleachers in a reasonably safe condition considering the crowds attending the events and the use to which the bleachers would normally be employed. The defendants by separate answer deny all allegations of failure of duty; and allege the plaintiff did not exercise ordinary care for her own safety, was guilty of contributory negligence and assumed the risk of injury.

The defendants Warren and Berry filed a third party complaint against William Austin Nailling, d/b/a Nailling Mill & Lumber Company, the supplier of the lumber used in the bleachers; Buck Kirk, J. R. Moran and Paul Rice, carpenters, who allegedly constructed the bleachers. The gist of the third party complaint is that the named third party defendants were negligent in erecting, furnishing, supplying and constructing the bleachers with defective materials; and in failing to inspect the bleachers and discover the defects therein. The third party defendants are alleged to have furnished and used material in a defective condition which was unreasonably dangerous to the patrons of the wrestling match; and, they are liable on the theories of express and implied warranty under T. C.A. §§ 47–2–313, 47–2–315. The third party plaintiffs ask for judgment over against the third party defendants for any amounts the third party plaintiffs may be held liable to the original plaintiffs.

The lawsuit was tried before a jury. A verdict was entered in favor of the plaintiffs against the defendant Warren, the promoter of the wrestling match. The jury found in favor of the defendants Berry and Disabled American Veterans. The jury found in favor of all third party defendants. Judgment was entered on the verdicts. The defendant Warren appeals from the judgment against him, and he also appeals from the judgment which dismissed his third party action.

We will first consider the appeal of the defendant Warren from the verdict and judgment rendered against him and in favor of the plaintiffs. There are twenty-three assignments of error which overlap extensively and relate to all phases of the appeal. As pertains to the judgment rendered against him we conclude the defendant Warren insists upon a reversal wherein: (1) There is no material evidence to support the verdict; (2) The verdict is excessive; (3) The trial judge erred in the instructions given on *res ipsa loquitur*, which doctrine is not applicable to the lawsuit; (4) The trial judge erred in his definition of the duties of a proprietor of a place of amusement; (5) The trial judge erred in his instructions that the patron is not required to make an inspection of the premises; (6) When read as a whole the instructions are misleading and disjointed; (7) The trial judge erred in admitting into evidence a broken board, allegedly found in the building one week after the accident.

The facts establish the defendant Warren leased the building from the defendant Berry for the purpose of conducting a wrestling match one night each week, at a rental of $50.00 per week, or match. The ring in which the wrestlers perform is owned by Warren. The defendant Berry

agreed to construct bleachers on all sides of the ring, and Warren was to pay Berry the cost of construction at the rate of $25.-00 per week. Berry hired J. R. Moran and Paul Rice to construct the bleachers, and paid them by the hour. Will Austin Nailling, d/b/a Nailling Mill & Lumber Company, drew a sketch of how the risers and braces should be constructed. Berry bought lumber from Nailling for the construction of the bleachers. After the bleachers were completed, the defendant Warren contacted Buck Kirk to build two additional rows of seats at the top of the bleachers. Kirk got Paul Rice and two men named Cherry to construct these additional seats. The lumber used came from Nailling's lumber company, but the proof fails to establish who ordered the lumber. Warren paid for the lumber, and paid Kirk for the labor; Kirk in turn paid Rice and the Cherry men. The defendant Berry testified positively that he did not know two rows of seats had been added to the top of the bleachers. These additional two rows of seats were constructed prior to the accident in question. Neither the defendant Berry nor the defendant Warren inspected the bleachers or the additions thereto.

The plaintiff was seated on the top seat of the bleachers at the south side of the building. The wrestling match had concluded and it was time to leave. It appears the wrestlers all got back in the ring and were engaged in what appeared to be a fight. The crowd became very excited and people were yelling and shouting. The plaintiff remained seated with her young grandson in her lap. It appears the other members of the family seated on the same seat as the plaintiff stood up, and they all sat back down at approximately the same time, whereupon the board which formed the bleacher seat broke, and the plaintiff fell to the concrete floor. Both defendants Berry and Warren knew that crowds at wrestling matches become highly excited, and the individual patrons indulge in stomping, shouting and jumping up and down.

We hold it to be an unusual occurrence for a seat at a wrestling match to break under the weight of the patrons thereon, and in the ordinary course of things this does not happen. Where the thing causing the harm is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, if affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. Southern Gas Corporation v. Brooks (1961), 50 Tenn.App. 1, 359 S.W.2d 570. The foregoing statement of the doctrine of *res ipsa loquitur* is applicable to this lawsuit, and the happening of the event under the circumstances stated would warrant an inference of negligence upon the part of the defendants Berry and Warren. It is not necessary that the plaintiff prove a specific act of negligence; the inference makes a jury question. When, as here, the prerequisites of the doctrine are met the defendant must come forward with explanatory proof, and the jury is permitted to choose the inference of the defendant's negligence in preference to other permissible or reasonable inferences. Coca-Cola Bottling Works v. Sullivan (1942), 178 Tenn. 405, 158 S.W.2d 721, 171 A.L.R. 1200.

In the case at bar, the defendant Berry proved he had no part in the construction of the two topmost rows of seats on the bleachers. Neither defendant Berry nor Warren could prove any act of inspection by either of them. Both defendants admitted knowledge of the excitable nature of a crowd watching a wrestling match. Neither defendant could prove any standard of quality set by them as to the type lumber used in the bleachers; they stated the bleachers were built according to the rough sketch of the risers and braces as submitted by Nailling for that purpose. Nailling, however, testified the construction of the risers and braces was not according to his sketch, and explained the difference in detail.

Under this condition of the proof the rule is that when all the evidence is in, the question as to whether the defendant has rebutted the inference raised against him is for the jury. The case must be submitted to the jury for it to determine where the preponderance of the evidence lies, with the burden of proof remaining with the plaintiff. The weight of the explanation by the defendant, like the weight of the inference raised for the plaintiff, is for the determination of the jury. Casenburg v. Lewis (1931), 163 Tenn. 163, 40 S.W.2d 1038; 65A, C.J.S. Negligence § 220.20, p. 596.

■■ In considering the duty owed by a proprietor of a wrestling match to the patrons attending the event, we find the law established in this state that when one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit. Chattanooga Warehouse & Cold Storage Co. v. Anderson (1918), 141 Tenn. 288, 210 S.W. 153; Worsham v. Dempster (1923), 148 Tenn. 267, 255 S.W. 52. The duty thus imposed upon the proprietor or promoter of a wrestling match requires ordinary care in respect to the condition of the bleachers or seats furnished. See: 4 Am.Jur.2d, Amusements and Exhibitions, § 57, p. 175 et seq.; cases annotated at 87 A.L.R.2d 1188; 86 C.J.S. Theaters & Shows § 39, p. 714 et seq.

■ We further hold that it is not necessary that the proprietor of the event have actual knowledge of the defect which causes injury, because one element of the duty imposed upon him is that of inspection to see that the seats provided are safe for occupancy. 4 Am.Jur.2d, supra, and the cases cited at footnotes 8 and 9 at page 177; cases annotated at 21 A.L.R.2d 429.

■ We conclude, under the proof, the jury could find the plaintiff was injured under circumstances which justify an inference that her injuries would not have occurred had the defendant Warren, who was in charge of the seating arrangement used for spectators at the wrestling match, exercised ordinary care for the plaintiff's safety. See and compare: Lawson v. Clawson (1939), 177 Md. 333, 9 A.2d 755; Nownes v. Hillside Lounge, Inc. (1965), 179 Neb. 157, 137 N.W.2d 361; Boyer v. Iowa High School Athletic Assoc. (1967), 260 Iowa 1061, 152 N.W.2d 293; Couris v. Casco Amusement Corp. (1956), 333 Mass. 740, 133 N.E.2d 250. The jury apparently found the explanation offered by Berry, the owner of the building, sufficient to offset the inference against him; and that the plaintiff did not carry the burden of proof as to the defendant Berry.

■ Patrons of a place of public amusement are required to use ordinary care to avoid injury. In the absence of notice to the contrary, a patron attending a place where a sporting event is being held is entitled to assume that the premises are in a reasonably safe condition; the patron is not required to make an inspection to determine the safety of the premises. 86 C.J.S. Theaters & Shows, § 47 pp. 743-745. The testimony reveals that H. C. Parker observed a "knot" in the board upon which he and his wife were seated. He apparently did not call this to the attention of his wife, and he did not change seats. Whether the foregoing constituted contributory negligence on his part was a question for the jury.

■ By the testimony of Mr. Jere Gordon, an attorney for the plaintiffs, a broken board was introduced into evidence. Mr. Gordon testified that after he was employed by the plaintiffs, and about a week after the accident, he went to the building where the plaintiff was injured and found the board under the bleachers at the south side of the building. The defendant insists

the trial judge erred in admitting the board into evidence. It was not necessary that the plaintiffs prove the board that broke was of inferior quality. It is established a board did break while being subjected to the normal use to which it was employed by the defendant Warren. Under the doctrine of *res ipsa loquitur* the inference of negligence would take the case to the jury. Any error in the admission of the board into evidence was harmless. T.C.A. §§ 27–116, 27–117.

■ The plaintiff Violet Parker is 52 years of age. Prior to the accident she was able-bodied and worked on the farm with her husband, did her household work and baby-sat for compensation. Since the accident she has experienced constant pain; she cannot do manual labor; she needs assistance with normal household duties, and does not work as a baby-sitter. This plaintiff sustained a compressed fracture of the twelfth vertebra of the thoracic spine. The plaintiff is fitted with a back brace which she now wears. The plaintiff was hospitalized for three weeks immediately after the injury, and was rehospitalized in December, 1971. Medical testimony gives the plaintiff a 15 percent permanent partial disability to the body as a whole. The plaintiff cannot sleep and rest normally, and the injuries have interfered with her normal marital relations with her husband. The plaintiff H. C. Parker has incurred approximately $1,000 doctor and hospital bills. We conclude the verdict and judgment of $26,500 for Violet Parker, and the verdict and judgment of $4,465 for her husband H. C. Parker, do not in any manner shock the conscience of the Court, each amount is justified by the evidence, and the verdicts are not excessive.

Many assignments and much argument is advanced to the effect the trial judge improperly charged the jury. We have carefully reviewed the charge, and we hold the issues were fairly charged. We fail to find the charge subject to the many attacks leveled against it, and we overrule all assignments directed to the charge of the court. It results all assignments of error directed toward the verdict and judgment in favor of the plaintiffs against the defendant Bill Warren, d/b/a Warren Enterprises, are overruled, and that judgment is affirmed.

Bill Warren also appeals from the judgment dismissing the third party defendants Will Austin Nailling, Buck Kirk, J. R. Moran, and Paul Rice. That appeal is primarily based upon: (1) The trial judge inadequately charged T.C.A. §§ 47–2–313, 47–2–315, relating to express and implied warranty; (2) The trial judge erred in his failure to charge strict liability in tort as pled.

■ There is no material evidence of an express warranty on the part of anyone. The trial judge did accurately and fully charge the law on express warranty, but the evidence does not justify the charge. Had a verdict been rendered for the defendant Warren on his third party complaint, we would, at the insistence of the third party defendants, have a serious question as to the propriety of a charge on the law of express warranty. The defendant Warren as the third party plaintiff has no ground for complaint to the charge as given on express warranty.

■ The trial judge charged the law of implied warranty fully and completely over 4½ pages of the typed charge as given. This charge was fair, understandable and sufficient. The defendant Warren as third party plaintiff has no ground for reversal based upon a claim that the trial judge "erred in failing to give a full and complete charge as to the effect of Section . . . 47–2–315, Tennessee Code Annotated."

■ Our Supreme Court has adopted the doctrine of strict liability in tort. Ford

Motor Company v. Lonon (1966), 217 Tenn. 400, 398 S.W.2d 240; Olney v.· Beaman Bottling Company (1967), 220 Tenn. 459, 418 S.W.2d 430. Basically, strict liability is imposed upon one who sells a product in a defective condition unreasonably dangerous to the user or consumer or to his property. We first consider this theory of recovery by the third party plaintiff Warren as applicable to the third party defendant Nailling, the seller of the lumber used in the construction of the two top rows of seats added to the bleachers.

■ Under the proof, reasonable minds could reach only one conclusion, namely, the grade lumber used in the construction of the two top rows of seats in the bleachers was not suited for that purpose. The question, however, is whether the seller Nailling is to be held strictly liable for the injuries resulting from the use of this lumber as seats on the bleachers. There is no material evidence that Nailling knew the lumber purchased in the name of Warren was to be used for the construction of an additional two top rows of seats. There is no proof that Nailling recommended the grade lumber used; and, the proof is inadequate to establish who ordered the lumber, and what grade lumber was ordered. Under the record we must conclude the grade lumber ordered was delivered. The record reveals there are several grades of lumber, and the higher the grade the greater the cost. From the record we can conclude that higher grade lumber may be committed to certain uses to which a lower grade could not be safely employed. The record establishes the lumber purchased was of a lower and inferior grade, and was used for a purpose in which only a higher grade could be safely employed.

1. Shepard's Southwestern Reporter Citations shows this decision by the Texas Court of

■ The doctrine of strict liability in tort should not be extended to those situations where the customer purchases an inferior grade of a certain product and then puts that product to a use to which only a higher grade of the same product is suited. To so hold would license customers and consumers to absolutely disregard the consequences of their acts. Under the facts, we hold the trial judge correctly refused to charge the law of strict liability in tort as to the third party defendant Nailling.

■ Regardless of the relationship between the third party plaintiff Warren and the third party defendants Kirk, Moran and Rice, the proof establishes the named third party defendants were not *sellers* of the lumber used in the two top rows of bleacher seats, and they were not engaged in the business of *selling* such a product. Under Restatement of Torts, Second, § 402A, strict liability in tort is so limited. We therefore hold the doctrine of strict liability in tort not applicable to those third party defendants. See and compare: Freitas v. Twin City Fisherman's Cooperative Association [1] (Tex.Civ.App.1970), 452 S. W.2d 931; Katz v. Slade (Mo.1970), 460 S.W.2d 608. The trial judge correctly refused to charge the law of strict liability in tort as to the third party defendants Kirk, Moran and Rice.

It results all assignments of error are overruled, and the judgment of the trial court is affirmed. The cost of this appeal is adjudged against the appellant.

CARNEY, P. J., and NEARN, J., concur.

Civil Appeals "RNRE—Application for writ of error refused, no reversible error."