## Helen R. GIBSON and Charles E. Gibson, Plaintiffs-Appellees,

v.

## UNITED STATES of America, Defendant-Appellant.

### No. 80–1017.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1981.

Decided Feb. 18, 1982.

W. J. Michael Cody, U. S. Atty., Timothy R. DiScenza, Memphis, Tenn., Robert S. Greenspan, Civ. Div., Appellate Staff, Dept. of Justice, Washington, D. C., for defendant-appellant.

James D. Senter, III, Humboldt, Tenn., for plaintiffs-appellees.

Before EDWARDS, Chief Judge, KENNEDY, Circuit Judge, and CECIL, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge.

Helen and Charles Gibson brought suit for injuries Mrs. Gibson suffered when she slipped and fell on some rice scattered on the aisleway of a Navy Commissary in Millington, Tennessee, operated by the United States Navy.

The United States, as defendant-appellant in this suit, under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1976), contends that under Tennessee law plaintiffs proved no facts which serve to establish negligence on the part of the United States and its employees:

> In the absence of proof by the Gibsons that the government breached its duty to exercise ordinary care or to correct defects of which it had actual notice or constructive notice, recovery under the Federal Torts Claim Act, applying the law of Tennessee, should not be allowed.

The District Judge who heard this case had long experience in Tennessee law. He relied in finding for the plaintiff on *Allison v. Blount National Bank*, 54 Tenn.App. 359, 390 S.W.2d 716 (1965). In that case the Tennessee Court of Appeals held:

> The facts, concerning which there is no substantial dispute, are as follows:
>
> The defendant, a national banking corporation, owns and operates a branch bank on the Old Knoxville Highway near Maryville, Tennessee. The lobby floor of the branch bank is constructed of terrazzo, light grey in appearance. The bank constantly keeps a hard, corrugated, rubber mat in place just inside the Rose Street entrance to the lobby and, on occasion, when customers track in water and it begins to accumulate, the bank places an absorbent mat or rug on the lobby floor next to the rubber mat. The bank's janitorial service is limited to the evening hours, and it is not the practice of the bank to mop up excess moisture from the lobby floor during banking hours.
>
> On July 3, 1961, it rained intermittently throughout the morning hours, stopping just before the noon hour. At approximately 1:00 P.M., the plaintiff entered the bank lobby through the Rose Street entrance. The usual rubber mat was at the entrance; however, the absorbent mat or rug was not in place and had not been used during the morning hours. As plaintiff stepped from the rubber mat onto the terrazzo floor, her right foot slipped and she fell, receiving the injuries of which she complains.

The plaintiff described the manner of her fall as follows:

"A. Well, I entered the door. And just as you go in, why there's a rubber mat there, right at the entrance of the door, and just as I stepped off of the rubber mat onto the floor, why my right foot just slid out from under me. And this left foot just folded up under me. And I just set right flat down on the left foot. * * *"

After plaintiff's fall, her dress was found to be wet where it had come in contact with the floor, as was the side of her left shoe.

The plaintiff testified that, after her fall, she could see evidence that water had been tracked into the bank by prior customers. In explanation of her inability to see the water trackage prior to her fall, the plaintiff testified that the terrazzo floor was mottled, light grey in color, and that in the absence of a close examination, the presence of water was not evident. Plaintiff also stated that she was not on the lookout for the presence of water as it had stopped raining about one hour before she entered the bank lobby.

Mr. James A. Norton, the manager of the bank's branch office, testified that he had been present during the morning hours; that he knew it had been raining but had not noticed any accumulation of water on the floor of the bank and, consequently, had not placed the absorbent rugs at the entrance; that after plaintiff's fall, he examined the lobby floor and found a film of moisture on the floor as the result of water having been "tracked in" by customers prior to plaintiff's arrival.

We have been unable to find a reported Tennessee case wherein the Court has considered the liability of a proprietor of a place of business for an injury resulting from a fall on a floor made slippery by tracked-in water, snow and the like. However, numerous such cases from other jurisdictions are reported in the annotation beginning at page 6 of 62 A.L.R.2d.

We have read most of the cases reported in the annotation, as well as others cited in the briefs and revealed by our independent research, and have come to the conclusion that the duty owed by a proprietor of a place of business in the so-called trackage cases is the same as in any other situation where a dangerous condition is created on the premises by someone other than the proprietor or his employees—that duty is to exercise reasonable care to keep the premises in a reasonably safe and suitable condition, including the duty of removing or warning against a dangerous condition traceable to persons for whom the proprietor is not responsible, or to the action of the elements, if the circumstances of time and place are such that by the exercise of reasonable care the proprietor should have become aware of such condition. *Walls v. Lueking*, 46 Tenn.App. 636, 332 S.W.2d 692; *Dolan v. Bry Block Mercantile Co.*, 23 Tenn. App. 47, 126 S.W.2d 376; Anno. 62 A.L.R.2d 6, 15 and 33. In the trackage cases, as in the others, liability is predicated on the proprietor's superior knowledge of the dangerous condition on his premises and he is not liable for injuries sustained from dangers that are obvious, reasonably apparent or as well known to the customer as to the proprietor. *Kendall Oil Co. v. Payne*, 41 Tenn.App. 201, 293 S.W.2d 40; Anno. 62 A.L.R.2d 6, 28.

Some factors to be considered in determining if there has been a reasonable time lapse for a proprietor of a business establishment to be chargeable with constructive notice of a condition endangering the safety of his customers are the nature of the business, the size of the store, the number of customers, the nature of the dangerous substance, its location, and the foreseeable consequences. *Moore v. American Stores Co.*, 169 Md. 541, 182 A. 436; *Hubbard v. Montgomery Ward & Co.*, 221 Minn. 133, 21 N.W.2d 229; see also cases cited under the heading "Time factor as affecting proof of constructive notice." Anno. 61 A.L.R.2d 126 et seq. Consequently, it is generally for the jury to say whether the condition causing the injury to a store customer had existed long enough that a reasonable man exercising reasonable care would have dis-

covered it. *Hale v. Safeway Stores, Inc.,* 129 Cal.App.2d 124, 276 P.2d 118; *Fox v. Ben Schechter & Co.,* 57 Ohio App. 275, 13 N.E.2d 730; *Hogan v. S. S. Kresge Co.* (Mo.App.1936), 93 S.W.2d 118.

In our opinion, under the facts in the present case, reasonable minds could disagree easily (1) as to the amount of water on the lobby floor, (2) the length of time it was present, and (3) whether or not the presence of the water was as reasonably apparent to the plaintiff as to the defendant. As a decision on the issue of liability, of necessity, would be based on their conclusions on these issues, it follows that reasonable minds could disagree easily as to whether the defendant was guilty of negligence in permitting water to accumulate on a terrazzo floor and in failing to warn plaintiff of its presence, and as to whether plaintiff was guilty of negligence in failing to observe the water before she fell.

"When a given state of facts is such as reasonable men may fairly differ upon a question as to whether there was negligence or not, the determination of the matter is for the jury." *Knoxville Traction Co. v. Brown,* 115 Tenn. 323, 330, 89 S.W. 319, 321.

*Id.* 390 S.W.2d at 718–19.

The District Judge's treatment of the Tennessee law applicable to the facts of this case follows:

In this case we apply the law of the State of Tennessee even though this is a tort claim case wherein these Plaintiffs are suing the United States of America under what is commonly known as the Tort Claims Act.

By that act Congress has authorized and consented to suits against the government, provided they are done within the procedural requirements that Congress authorized the Executive Department to recognize. Among those, of course, is the duty to make a claim prior to filing a suit. And in this case the claim was made for Mrs. Gibson in the amount of thirty thousand and for Mr. Gibson in the amount of five thousand dollars.

The law of the State of Tennessee that is applicable to this case is that law which is commonly referred to as the duty of a proprietor of premises to the invitees.

This is a case wherein a customer in a self-service grocery store has sued the proprietor.

Now the duty is to use reasonable and ordinary care for the safety of invitees. This would include the remedying of any defects which were known or should have been known in the exercise of reasonable and ordinary care to those in charge of the operation.

This brings into play the circumstances of the operation, and the total picture on the morning that this Plaintiff, Mrs. Gibson, was injured.

The Court finds that on September 25, 1976 Helen R. Gibson was an invitee in the Commissary at the Millington Naval Air Base, and that some time about noon or thereafter she did in fact fall near aisle 4 of the commissary on some rice.

Now, there is a dispute about the amount of rice, but the Court finds that there was too much rice for safety, and more than four or five grains. The rice had been spilled on a floor which was similar in color to the rice, thereby making it difficult for anyone such as Mrs. Gibson to visually detect the rice.

I further find that the proof establishes that those in charge of the operation of the commissary recognized that one of the hazards of the operation was the spillage from merchandise of various types. They were extremely conscious of this, and while they were not too thorough in the policies with regard to this, it was strict and invariable policy that any and all employees who saw spillage were to immediately remove it.

The method that was used for detecting spillage of things such as rice was the reporting of this by customers who either actually caused the spillage or those who observed it, and store personnel who had

occasion to observe spillage as they were carrying out their other duties.

On the morning in question it was a Saturday and there was a limited sales force in the store. While Mr. Harrington, an assistant manager, had been there that morning, there is no proof to show that he was actively supervising the activities that led to this fall. The proof is not clear about the number of people that were there. However, I do find that contrary to testimony of the Government personnel, more particularly Mr. Colson, Mr. Graves was not functioning in a security fashion on that morning, he was at that time in the butcher shop. I don't think Mr. Colson was deliberately falsifying his testimony, but it has been a long time and both of the Government witnesses were vague about their recollection.

I find that the only two people that we know were on the sales force, were Mr. Gibson, the husband of the Plaintiff Helen R. Gibson, and a Mrs. Hampton.

The proof is such that on other occasions work parties were available to assist in the various duties which would have included such things as being about the store and noticing such things as rice. On this occasion there was no work party. The personnel in charge of the store had let most of the regular personnel off because it was Saturday.

There has been some suggestion that Mr. Gibson, because he was an E–6 had some authority over this particular function. I find that not to be the case. This is merely a dodge that the Government asserts, namely, that whoever has the higher rank or rate is responsible. As a practical matter that was not the case.

Mr. Colson, through his testimony, frequently used the words 'I would assign someone to the identification desk,' or, 'I would send someone to the warehouse.' And, while I am not faulting him, it is apparent that he considered that it was his right and authority. This business that he was an E–5 and Mr. Gibson was an E–6 is merely an afterthought.

A commissary is not run by the highest one in rank. Assigned duties and responsibilities must go with running the commissary. Mr. Gibson was not by training or experience capable of making the decisions to tell people when and how to police the store. I further find that there is no proof that his duties carried him near aisle 4 that morning.

Therefore, the Court believes that there was a duty to inspect and foresee the likelihood of rice being spilled, and that the Defendant had inadequate personnel to use reasonable and ordinary care for the safety of persons such as Helen R. Gibson.

I further find that the Defendants failed to establish that Mr. Gibson was a party to that negligence through his assigned duties and that, as a matter of fact, he did not neglect his assignment. He was working in another part of the store, either the identification desk or the warehouse. So, I find that there is no contributory negligence on the part of Mr. Gibson which would bind him or his wife.

I do find that there is negligence on the part of the United States, so we go forward to consider damages.

While we recognize that the facts in this case are quite different from those in the *Blount* slip and fall case, the principles appear to us to be the same. The negligence which the judge as the finder of fact could appropriately have found here consists of having inadequate personnel to observe the floors of the commissary at the time concerned when it was known there might be both traffic and spillages, and that some spillages such as bulk rice would be hard for customers to detect when spilled on a similar colored floor.

We believe we should give considerable weight to the fact that an experienced Tennessee judge who heard this case has made the crucial decision in interpreting Tennessee law.

We also reiterate the Tennessee court's preference for decision in negligence cases by the trier of the facts who saw and heard

the witness.[1]  As stated in the *Allison* case, the Tennessee Court of Appeals said:

"When a given state of facts is such as reasonable men may fairly differ upon a question as to whether there was negligence or not, the determination of the matter is for the jury." *Knoxville Traction Co. v. Brown*, 115 Tenn. 323, 330, 89 S.W. 319, 321.

*Allison v. Blount National Bank, supra* 390 S.W.2d at 719.

While this case was tried to the court rather than to a jury, that fact should not weigh in the balance.  The United States unilaterally chose trial before its own judge in adopting the Federal Tort Claims Act.

Generally supportive of the view the District Judge in this case took of Tennessee law are *Henson v. F. W. Woolworth Company*, 537 S.W.2d 923 (Tenn.App.1974), *cert. den.* Tenn.Sup.Ct. 1975 and *DeSoto Auto Hotel v. McDonough*, 219 F.2d 253 (6th Cir. 1955).

In this last case, a panel of this Court consisting of Chief Judge Simons, Judge Shackelford Miller and then Circuit Judge Potter Stewart affirmed Judge Marion Boyd who had entered judgment after jury verdict.  The Per Curiam opinion terminated with this discussion of Tennessee negligence law which we deem applicable to our instant case:

Appellant also contends that the evidence failed to show that the dangerous condition had existed a sufficient length of time to enable appellant to know of its existence and in the exercise of ordinary care to have corrected it.  *Hill v. Castner-Knott Dry Goods Co.*, 25 Tenn.App. 230, 166 S.W.2d 638; *Illinois Central R. Co. v. Nichols*, 173 Tenn. 602, 118 S.W.2d 213.

But this is not a case of danger resulting from a foreign substance on the floor placed there through the actions of a stranger, the presence of which would not reasonably be anticipated by the owner. The evidence showed that oil and gas were supplied to customer's cars in the immediate vicinity of the scene of the accident, that appellant knew that as a result the concrete became slippery at times, that it was the duty of the janitor to clean it off when such a condition existed, and that the janitor had not been in that part of the garage for possibly an hour.  The evidence was sufficient to take the case to the jury on the issue of negligence.  *Great Atlantic & Pacific Tea Co. v. Randolph*, 3 Cir., 64 F.2d 247.

The issue of contributory negligence on the part of the appellee was also properly left to the jury.  *Louisville & N. R. Co. v. Tucker*, 6 Cir., 211 F.2d 325.

The judgment is affirmed.

*Id.* at 255.

In our judgment reasonable people may fairly differ upon whether or not the facts in the instant case constitutes negligence. In such a situation, when a Federal Tort Claims Act case is tried in Tennessee, the matter is for the trier of the facts.

The judgment of the District Court is affirmed.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I am unable to agree with the majority's interpretation of Tennessee law.  The majority opinion ignores plaintiffs' failure to demonstrate, by either direct or circumstantial evidence, the length of time that the

---

1.  Although slip and fall cases appear to be a special category in Tennessee law, it may be relevant to note that Tennessee in other respects has required landlords and owners who deal with the public to respond almost as if they were insurers.  In *Parker v. Warren*, 503 S.W.2d 938 (Tenn.App.1973), the Tennessee Court of Appeals said:

[W]hen one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that

he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.  * * * it is not necessary that the proprietor of the event have actual knowledge of the defect which causes injury, because one element of the duty imposed upon him is that of inspection to see that the seats provided are safe for occupancy.  *Parker v. Warren, supra* at 943.

*See also Pullins v. Fentress County Hospital, etc.*, 594 S.W.2d 663 (Tenn.1979).

rice had been on the floor. In my opinion, that is an essential element of plaintiffs' case, and without such evidence, plaintiffs are not entitled to recover. Consequently, I must dissent from the Court's holding.

The duty owed to an invitee, under Tennessee law, is the duty "to exercise ordinary care and diligence to maintain the premises in a reasonably safe condition." *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn.App. 1973). The proprietor is not an insurer of the safety of the premises; rather, liability is predicated on the basis of the proprietor's superior knowledge of a perilous condition.[1] *Id.* Thus, the only basis upon which to premise liability, absent a condition created by the proprietor, is that the proprietor have *notice* of the condition leading to the injury. Notice may be actual or it may be constructive. There is no claim here that the defendant had actual notice of the rice spillage. Plaintiffs, therefore, had to demonstrate facts sufficiently evincing constructive knowledge by the defendant in order to sustain defendant's liability.

An essential element to prove constructive notice is proof of the length of time the dangerous substance has remained on the floor. As just recently noted in *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn.App. 1980), where the court upheld the trial court's direction of a verdict for the defendant:

> If liability is to be predicated on constructive knowledge by the Defendant, the proof *must show* the dangerous or defective condition existed for such length of time that the Defendant knew, or in the exercise of ordinary care should have known, of its existence. *Allison v. Blount National Bank*, 54 Tenn.App. 359, 390 S.W.2d 716 (1965). (Emphasis supplied).

Since the plaintiff in *Jones* could not prove how long a plastic clip had been on the floor before she fell over it, the court upheld the directed verdict. *See also Stringer v. Cooper*, 486 S.W.2d 751, 757 (Tenn.App.1972), where the court reversed a directed verdict entered for the defendant after plaintiff proved he slipped on an object in an area not open to the general public:

> We understand the rule to be that where the plaintiff is an invitee in a retail establishment, in that part open to customers and the public, and the plaintiff slips on some substance on the floor and falls, the plaintiff *must show* directly or by circumstances how it came to be there, and if the substance was not placed there by the defendant, then plaintiff *must show* directly or by circumstances *how long* the substance was on the floor. This is a reasonable rule.... Therefore, the matter of notice of defective condition, ... is an *essential element* of the plaintiff's case. (Emphasis supplied).

Proof of the duration of the dangerous condition is, and has always been, part of the plaintiff's prima facie case in Tennessee. Since Mrs. Gibson failed to produce any evidence from which a trier of fact could determine how long the rice was in the aisle before she tripped on it, she is not entitled to recover damages for negligence.

The reason Tennessee courts require evidence of the length of time the dangerous condition has existed is to forestall jury awards based on mere speculation; a proprietor's liability is premised on his failure to exercise reasonable care and diligence which, if exercised, would have prevented the injury. *Paradiso, supra*, at 80; *Busler v. Cut Rate Super Market No. 1*, 47 Tenn. App. 21, 334 S.W.2d 738 (1960). Thus, in

---

**1.** The majority suggests that Tennessee law requires landlords and owners who deal with the public to respond in cases of injuries to invitees, other than slip and fall cases, almost as if they were insurers. *See* majority opinion at 209, n.1, *citing Parker v. Warren*, 503 S.W.2d 938 (Tenn.App.1973). I do not believe the distinction between *Parker* and the instant case or other slip and fall cases is based on the nature of the accident. Rather, the distinction

is that in cases such as *Parker* the proprietor of the premises should have known of the hazard since a reasonable inspection would have revealed it. Here, and in many of the slip and fall cases, since we cannot know how long the hazard existed, we cannot find that reasonable inspection would have revealed the hazard. It may have come into existence subsequent to the time the reasonable inspection would have been made.

*Busler, supra,* evidence that the defect had existed for four to five minutes before the accident was deemed insufficient to establish constructive notice and to impose liability. And in *Gargaro v. Kroger Grocery & Bakery Co.,* 22 Tenn.App. 70, 118 S.W.2d 561 (1938), evidence that the defect had existed for close to *thirty* minutes was not considered sufficient evidence to permit the jury to decide the issue of negligence. Certainly, then, the plaintiffs' evidence in the instant case is insufficient since there was no evidence from which the District Judge could determine whether the rice had been there for seconds, minutes or hours. The District Court should have ruled as a matter of law that defendant's alleged negligence was not established.

The Court's reliance on *Allison v. Blount National Bank,* 54 Tenn.App. 359, 390 S.W.2d 716 (1965), is misplaced. The evidence in that case demonstrated that the bank *had* constructive notice because water had accumulated in the lobby throughout the morning hours during which it had rained intermittently; the manager testified that he knew it had been raining and that he was aware of the potential danger when water was tracked in. On other occasions when customers tracked in water and it began to accumulate, the bank placed an absorbent mat on the floor. Thus, the jury could have reasonably found that the defendant was put on constructive notice of the potential hazard; a verdict for plaintiff would not have been based on mere specula-

tion. The court only held that it was reasonable for a jury to find "that the water condition did not come about as of the moment of plaintiff's fall or even minutes before, but had continued throughout the morning—that this was sufficient to charge the defendant with constructive notice of a condition endangering the safety of its customers . . . ." *Id.* 390 S.W.2d at 719–20. If, in our case, plaintiffs had shown that rice spillage was a continuing, recurring problem and that defendant was aware of that fact, it might be possible to find that the defendant was charged with constructive notice of the defect. However, no such evidence was presented.[2]

Furthermore, liability cannot be predicated solely on the alleged inadequate personnel on duty the day of Mrs. Gibson's accident. In *Gargaro, supra,* the Tennessee court specifically held that a defect's existence for thirty minutes was insufficient for a finding of constructive notice when the defendant's three employees were indisputably "very busy." *Id.* 118 S.W.2d at 565. Thus, the mere fact that the Commissary's personnel here were extremely busy the day of the accident provides no basis for a finding of liability.

It is true that other factors may enter into the "constructive notice" decision. As noted by the *Paradiso* court:

One must take into consideration the nature of the business, its size, the number of patrons, the nature of the danger, its

2. The other cases relied upon by the majority, *Henson v. F. W. Woolworth's Co.,* 537 S.W.2d 923 (Tenn.App.1975), and *De Soto Auto Hotel, Inc. v. McDonough,* 219 F.2d 253 (6th Cir. 1955), are similarly inapposite.

In *Henson,* there was evidence that the bubble solution over which plaintiff fell had been on the floor for a considerable time; adult footprints were found tracked in the solution. Furthermore, there was evidence that defendant's employees charged with supervising and inspecting the floors had negligently carried out this duty, which negligence was the proximate cause of plaintiff's injuries. Defendant was put on notice that during Christmastime there was an added necessity to inspect the floors for spillage. As the court noted:

There was proof from which the jury could reasonably find that the bubble solution was

spilled on the floor before [the manager and supervisor] walked down the aisle and they negligently failed to see such solution which they could and would have seen had they been attentive.
*Id.* at 925.

*De Soto,* as the majority opinion notes, was "not a case of danger resulting from a foreign substance on the floor placed there through the actions of a stranger, the presence of which would not reasonably be anticipated by the owner." *Id.* at 255. In the instant case, on the other hand, there is no evidence from which the jury could infer that the rice spillage was created by the actions of defendant's employees, nor, as in *De Soto,* could the jury find that the dangerous condition had existed for "possibly an hour." *Id.*

location along with the foreseeable consequences.

*Paradiso, supra,* at 79. *See also Busler, supra,* 334 S.W.2d at 740–41. Yet, plaintiffs failed to demonstrate that any of the aforementioned factors caused defendant to be charged with constructive notice of the spillage of rice. Plaintiffs proved only that Mrs. Gibson slipped on some rice in an aisleway. In my opinion, that is an insufficient predicate for a finding of liability. Plaintiffs have failed to demonstrate "material competent evidence from which it can be logically inferred the proprietor, by the exercise of ordinary care, would have or should have discovered the dangerous condition." *Paradiso, supra,* at 80. For these reasons, I would hold that the judgment of the District Court should be reversed, and judgment entered for the defendant.